*Fred Hyde & Associates, Inc.*
*57 Main Street*
*Ridgefield, CT 06877*
*(203) 894-1412, fredhyde@aol.com*

July 30, 2018

Mr. Ryan A. Fogg, Esq.
David J. Halberg, P.A.
Barristers Building
1615 Forum Place, Suite 3-B
West Palm Beach, FL 33401

Dear Mr. Fogg:

**Introduction:**

This report is my evaluation of the issues involving hospital and health facility administration in the cases of Donia Goines v. Lee Memorial Health System d/b/a Cape Coral Hospital ["Cape Coral Hospital"] and Jeovanni Hechavarria, RN; and Brianna Hammer v. Lee Memorial Health System d/b/a Cape Coral Hospital and Jeovanni Hechavarria, RN.

**Summary:**

The standard of care owed to Ms. Goines and Ms. Hammer is articulated in the federal Medicare Conditions of Participation, state law, the requirements of accreditation for Cape Coral Hospital and the policies of the hospital itself. Cape Coral Hospital did not have in place policies sufficient to have prevented the harms to Ms. Goines and Ms. Hammer. More important still, Cape Coral Hospital did not follow or implement the policies it had in hiring and supervision of personnel and in prevention of sexual assault.

Cape Coral Hospital was indifferent and careless in failing to meet the standard of care owed to Ms. Goines and Ms. Hammer by not taking reasonable steps to protect them from a foreseeable risk.

**Background, Qualifications:**

My qualifications to evaluate these issues and to submit this report are as follows:

I am the president of Fred Hyde & Associates, Inc., a professional consulting service to hospitals, physician groups, community organizations, unions and schools of medicine. For nearly fifty years I have been actively and continuously involved in hospital and health facility management and in teaching hospital management and finance.

**Education:**

I graduated from the Yale College in 1967, the Yale School of Medicine in 1972 and the Yale Law School in 1975. I passed the Bar examination in Connecticut in 1975 and have been a member of the

1


PLAINTIFF'S EXHIBIT "A" Part I of II

Connecticut Bar continuously since that time. In 1992, I received an MBA from the Columbia University School of Business.

**Hospital Field, Legal:**

From 1973 to 1977 I worked for the Connecticut Hospital Association, a trade association representing all hospitals in the State of Connecticut. From 1975 to 1977 I was General Counsel of that Association.

**Hospital and Health Facilities Field, Management:**

From 1977 to 1979 I was a Vice President at Yale-New Haven Hospital, New Haven, Connecticut. I subsequently continued to 1981 at that medical center, as the first Director of the Faculty Practice Plan for the Yale School of Medicine.

From 1981 until the present I have worked as an independent consultant in the hospital and health services field, including ten years (total) as chief executive of two community hospitals.

From 1987 to 1994 I served as President and Chief Executive Officer of Windham Community Memorial Hospital, Willimantic, Connecticut. As chief executive, I served, among other roles, *ex-officio* as a member of medical staff committees, managed board-medical staff relationships and oversaw or led accreditation efforts.

Simultaneously, I served as President and Chief Executive Officer of the Northeast Hospital Network, an alliance of seventeen hospitals engaged in the development of products and services in managed care, physician recruitment to a preferred provider organization, nurse staffing, and other matters of mutual concern to those seventeen hospitals.

From 1997 to 2001 I served as the part-time Chief Executive Officer of the Winsted Health Center, a community health center rebuilding on the premises of a former hospital. I continued to work as a consultant to this organization until 2016. In 2001 and 2002, I re-opened and served as the President and Chief Executive Officer of Aliquippa Community Hospital, Aliquippa, Pennsylvania.

From 2006-2010 I was chief executive officer of an eight-room ambulatory surgery center, the Delaware Outpatient Center for Surgery in Newark, DE. In that capacity, I was responsible, among other tasks, for overall management, for supervision of risk management and credentialing activities, and for assuring compliance with appropriate standards for accreditation of ambulatory health care facilities.

**Hospital Field, Consulting:**

As a consultant from 1981 to the present—including the assignments noted above—I have undertaken work involving management, finance, personnel and planning issues in more than three dozen hospitals.

**Hospital Field, Teaching:**

From 2003 to the present I have been a Clinical Professor in the Department of Health Policy and Management at the Joseph Mailman School of Public Health at Columbia University, New York teaching courses in hospital administration, health care finance and medical technology to graduate students in public health.

In 2013, I was named a Fellow of the Global Healthcare Innovation Management Center at Fordham University, New York City.

In 2016 and 2017 I co-taught courses in Columbia Business School in international health.

In 2017 I became an Adjunct Associate Professor in Georgetown University's Department of Health Systems Administration. In that capacity I teach two graduate courses on health care finance.

My résumé is attached as the first Exhibit to this report.

**Materials Reviewed**

Materials I reviewed in the formation of my opinion are:

FOIA – Cape Coral PD, 4-17, 2017;
FOIA – Department of Health, 6-20-2017;
FOIA – ASA Lee County re 15-0004475 (Briana Hammer): Case Supplemental Report, 9-8-2015; and Interview with Hechavarria;
FOIA – ASA Lee County re 16-011451 (Donia Goines): Case Supplemental Report, 8-1-2017;
Florida Dept. of Health Office of General Counsel Letter and Administrative Complaint;
MB – Cape Coral Hospital, 7-15-2016 Admission;
Complaint for Damages, filed 10-25-2017, operative as of 4-23-2018;
Amended Complaint for Damages, Goines v. Lee Memorial Health System;
Second Amended Complaint for Damages, Hammer v. Lee Memorial Health System;
LMHS's Privilege Log, 4-4-2018;
Hechavarria's employment File with LMHS;
LMHS Policies and Procedures;
LMHS Investigation re Goines;
LMHS Investigation re Hammer;
LMHS Risk Management Investigation re Hammer;
LMHS Risk Management Investigation re Goines;
LMHS's 7-18-2016 Unsworn Recorded Statement of Donia Goines;
LMHS's 7-21-2016 Unsworn Recorded Statement of Jeovanni Hechavarria;
Hospital photos;
Lab photos;
LMHS Medical Records, Goines, 11-10-2014 through 5-30-2017;
Donia Goines' journal;
Lee Memorial Health System Employee Guide, Revised June 2015;
Lee Memorial Health System Employee Guide, Revised August 2013;
Domestic Violence Case No: 10-558, Restraining Order against Mr. Hechavarria;
Domestic Violence Case No: 15-190, Restraining Order against Mr. Hechavarria;
Domestic Violence Case No: 99-222, Restraining Order against Mr. Hechavarria;
Harbor Nissan Employment Records;

Deposition of Pamela Palmerton, with exhibits;
Deposition of Christine Montesino-Mena;
Depositions of Debra Wiles (individually and as corporate representative), with exhibits;
Deposition of Robert Sherwood, with exhibits;
Deposition of Donia Goines;
Deposition of Evelyn Zuccharo;
Deposition of Jeovanni Hechavarria;
Deposition of Kristy Rigot, (as corporate representative);
Deposition of Rafael Ortiz (in two parts); and
Deposition of Sharon Zeller.

Employee Database excerpts, incidents 2015-2017.

### Summary, Standards of Care

Cape Coral Hospital fell below acceptable institutional standards in (A) its failure to provide a safe environment of patient care; (B) its negligence in hiring and supervision of Jeovanni Hechavarria; and (C) its inadequate response to allegations of sexual assault.

*A.    Safe Environment of Care*

The provision of a safe environment of care is a basic right of all hospital patients. Cape Coral Hospital had an obligation to protect its patients from harm, including sexual assault. This obligation is clearly defined in the standards of DNV GL Healthcare, the accrediting organization of Cape Coral Hospital, as follows:

*PR.1: Specific Rights*

*The organization shall protect and promote each patient's rights.*
*SR.6: Provision of care in a safe setting;*
*SR.7: Freedom from all forms of abuse or harassment;*
*SR.10 Procedure for submission of a written or verbal grievance.*

*The hospital must ensure that patients are free from all forms of abuse, neglect, or harassment. The hospital must have mechanisms/methods in place that ensure patients are free of all forms of abuse, neglect, or harassment.*

*The hospital must assure that any incidents of abuse, neglect or harassment are reported and analyzed, and the appropriate corrective, remedial or disciplinary action occurs, in accordance with applicable local, State, or Federal law.*

*SR. 1: The organization shall have a means for establishing clear expectations for identifying and detecting the prevalence and severity of incidents that impact or threaten patient safety. This shall include medical errors and adverse patient events.*

*The organization's Patient Safety System shall be documented and shall address the following:*

*SR.2a Detection;*
*SR.2b Preventative and corrective action;*
*SR.2c Defined processes to reduce risk;*
*SR.2d Implementation of action plans;*
*SR.2e On-going measurement to ensure action effectiveness;*
*SR.2f Management review of response and resource allocation utilizing the results of patient adverse events and other data analysis; and,*
*SR.2g Policy and procedure of informing patients and/or their families about unexpected adverse events.*

In addition to DNV GL Healthcare's standards regarding the hospital's obligation to provide a safe environment of care for its patients, Lee Memorial Health System's policies and procedures express their commitment to the protection of the patient, as follows:

*Sexual Abuse Prevention and Reporting Risk Management: Patients in the Lee Memorial Health System shall be protected from sexual abuse to the greatest extent reasonably possible, in accordance with statutory requirements.*

### B.     *Hiring and Supervision of Employees*

DNV GL Healthcare's standards clearly articulate the responsibility of the hospital leadership for the selection of members of its organization, as follows:

*GB.1 LEGAL RESPONSIBILITY*

*There must be an effective governing body that is legally responsible for the conduct of the organization. The governing body is responsible for all services provided in the organization including all contracted services.*

*SR.1: The governing body...medical staff, and administrative officials...are responsible and accountable for ensuring that:*

*SR.1c: Criteria that includes aspects of individual character, competence, training, experience and judgment is established for the selection of individuals working for the organization, directly or under contract, and/or appointed through the formal medical staff appointment process;*

Further, the hospital's nursing leadership is responsible to assure that the nursing staff is adequate to provide a safe level of patient care:

*NS.2: NURSE EXECUTIVE*

*SR.2: The nurse executive is responsible for the operation of the service, including determining the types and numbers of staff necessary to provide nursing care for all patient care areas of the organization and standards of nursing practice.*

*SR.3: The nurse executive is responsible for the development, approval and implementation of all nursing service policies and procedures.*

### C.     *Response to Allegations of Sexual Assault*

Cape Coral Hospital also fell below the standard of care in its response to allegations of sexual assault, including failure to properly investigate and follow an appropriate grievance procedure process.

DNV GL Healthcare's Grievance Procedure standards call for the following:

*SR.1: A list of whom to contact;*
*SR.2: The governing body's review and resolution of grievances or the written delegation of this function to an appropriate person or committee;*
*SR.3: A referral process for quality of care issues to the Utilization Review, Quality Management or Peer Review functions, as appropriate; and,*
*SR4: Specification of reasonable timeframes for review and prompt response and resolution to patient grievances.*
*SR.5: Grievance resolutions must be in writing and directed to the patient. The grievance resolution shall include the following:*
*SR.5a Organization contact person;*
*SR.5b Steps taken to investigate;*
*SR.5c Results of the grievance process; and,*
*SR.5d Date of completion.*