The following sections discuss and offer examples to illustrate the ways and the extent to which Lee Memorial Health System/Cape Coral Hospital fell below acceptable standards of care.

### A.   *Safe Environment of Care*

From its negligence in hiring and failure in supervision of employees, to its inadequate response to an allegation of sexual assault, Cape Coral Hospital demonstrated indifference and carelessness in protecting the safety and well-being of its patients. In so doing, it has fallen short of the accreditation standards of DNV GL Healthcare and of its own policies and procedures.

The chief executive - - the person responsible for overseeing the development of a safe environment of care, and representing the board in its governance of the hospital - - is ultimately responsible for the consistent indifference demonstrated by Cape Coral Hospital employees to the safety and wellbeing of patients. As a consequence, the chief executive may be said to be grossly negligent in the discharge of the chief executive's responsibilities.

Cape Coral Hospital patients were denied their most basic right - - the provision of care in an environment which is safe and free from abuse.

### B.   *Hiring and Supervision of Employees*

Cape Coral Hospital fell below the standard of care for hiring of Mr. Hechavarria in its failure to seek appropriate references and perform an adequate background check.

Despite DNV GL Healthcare's standards for employment, there has been no evidence presented that Cape Coral Hospital made any inquiries which would have produced information regarding the "character" of Mr. Hechavarria, either from references or past employers.

As a result of Cape Coral Hospital's failure to perform an adequate background check on Mr. Hechavarria, the hospital failed to detect that:

> (a) Mr. Hechavarria had been the subject of restraining orders by the Charlotte County Court on three separate occasions, dating back to May 24, 1999. These documents detail a long history of physically violent behavior by Mr. Hechavarria, extending back to his period of Naval duty in Virginia. The petitions for protective order include descriptions of Mr. Hechavarria threatening his wife with a gun, physically assaulting her on multiple occasions, and punching and choking their daughter. The Court orders in each case restrict Mr. Hechavarria from contact with his children, as well as his wife.

> (b) Mr. Hechavarria had been terminated by his previous employer Harbor Nissan on March 15, 2010 following two warnings for violation of company policies. There is no evidence that his supervisor at Harbor Nissan was ever contacted by Cape Coral Hospital.

> (c) Mr. Hechavarria had been discharged from the Navy due to misuse of prescription drugs and was barred from future service. There is no evidence that any request was made for Mr. Hechavarria's military records or discharge papers.

In addition, Mr. Hechavarria states in his deposition (pg. 48) that he held at least two jobs in the period of time between his termination by Harbor Nissan and his hiring by G4S Security Solutions. There has been no evidence produced to date that any supervisors at these places of employment were contacted by a representative of Cape Coral / Lee Memorial Health System as part of a background check on Mr.

7


PLAINTIFF'S EXHIBIT "A" Part II of II

Hechavarria. In fact, there appears to have been no request by Cape Coral / Lee Memorial that Mr. Hechavarria explain the gap in employment between 2010 and 2012 (see Mr. Hechavarria's employment file, pg. 123).

It appears that Cape Coral Hospital relied solely on the "Confidential Background Screening Report" produced by "Sterling," which lists only "G4S Secured Solutions" under employment verification (pg. 131, Hechavarria employment file). Further, Sterling's report indicates that the one reference pursued - - G4S Secured Solutions - - provided only dates of employment, noting "The given company uses an automated employment verification service…No further information is available." (pg. 136, Hechavarria employment file). In essence, Cape Coral Hospital hired Mr. Hechavarria with *no information from any previous employer*. No written employer references were requested or received. No documentation from Mr. Hechavarria's naval service was sought. Mr. Hechavarria's representations regarding his work experience were simply accepted as factual by Cape Coral Hospital, despite a significant gap in employment and no supporting documentation of any type by the applicant.

In her deposition, Ms. Kristy Rigot, System Director, Recruitment and Retention, acknowledges that reference checks of prospective employees are generally limited to confirming dates of employment and acknowledges that they hired Mr. Hechavarria without information regarding his past conduct as an employee. As a consequence, they were unaware of his disciplinary problems at former employer Harbor Nissan, as well as his discharge from the Navy for serious misconduct.

It is unclear how Cape Coral Hospital could have met the DNV GL Healthcare standards requiring the assessment of "individual character, competence, training, experience and judgment…for the selection of individuals working for the organization" with no letters of recommendation, no written references and no verbal contact with previous employers.

Even after the allegation of sexual assault made by Ms. Hammer, there is no evidence that Cape Coral / Lee Memorial Health System pursued further background information regarding Mr. Hechavarria. In his deposition, Mr. Hechavarria testifies that he had no contact with Human Resources following Ms. Hammer's accusation, knows of no additional investigation into his background and was not asked by anyone at Cape Coral Hospital about any past criminal activity.

Lee Memorial Health System's Policy and Procedure "Corrective Action Process" defines "Gross Misconduct" as including "Acts of violence or threats of violence toward anyone on or off LMHS premises" and is grounds for termination of employment without progression through the formal levels of corrective action. Yet Mr. Hechavarria was actively involved in a domestic violence court case while he was employed by Cape Coral Hospital. On March 10, 2015, a temporary protective order by the Charlotte County Court banned Mr. Hechavarria from contact with his wife and children. Six days later, March 16, 2015, patient Brianna Hammer informed the Cape Coral Hospital staff that Mr. Hechavarria had sexually assaulted her.

Cape Coral Hospital's Risk Manager, Ms. Debra Wiles, appeared to be ignorant of both the DNV GL Healthcare standards and her own institution's policies when she stated in her deposition that knowledge of a prospective employee's arrest record was not important and that she would only want to know "If they had a conviction." (pg. 30, Wiles' first deposition). In her deposition, Ms. Rigot of Human Resources acknowledges that the corrective action policy defines gross misconduct as including acts or threats of violence on or off LMHS premises and allows for termination of the employee, but states, "we would apply this if there was a conviction…I'm telling you what the practice is." (pg. 89, Rigot deposition). She also acknowledges that Lee Memorial Health System's policies call for an investigation by a threat assessment team if an employee is arrested for a violent act, but denies this applied to Mr.

Hechavarria's arrest for battery and states that she was unaware of his arrest (pgs. 78-79 Rigot deposition).

In his deposition, Mr. Hechavarria represented that he was unaware of any Lee Memorial Health System policy which would compel him to inform his supervisor of an arrest or criminal charges (pg. 80). He added that he ultimately informed his superior of his arrest for assault and battery (in July of 2016) only because of concern regarding his own employment security: "I did because I feared my employment, yes." (pg. 80). His supervisor, Ms. Colleen Labeid (sp) was apparently unaware of Lee Memorial Health System's "Corrective Action Process" policy or the institution's definition of "Gross Misconduct," as Mr. Hechavarria faced no disciplinary action following this disclosure. In fact, in his deposition Mr. Hechavarria describes her response as "emotional and concerned...she tried to console me...it was a rough moment for me." (pg. 81). In his deposition, System Investigator Rafael Ortiz testifies that if he had been told of Hechavarria's arrest after he (Hechavarria) reported it to his supervisor, he (Ortiz) would most likely have performed a Clerk of Court background check on Hechavarria (pg. 56 Ortiz deposition). However, after Ms. Hammer's allegations, Mr. Ortiz did not perform a background check on Mr. Hechavarria because he assumed the police would do this.

### C.   *Response to Allegations of Sexual Assault*

Despite DNV GL Healthcare's standards regarding the provision of a safe environment of care, Lee Memorial Health System's policies and procedures were insufficient regarding investigation, discipline and supervision of staff in response to allegations of assaultive behavior. Patient protections were further eroded by hospital staff members' ignorance of and/or failure to follow the relevant policies and procedures. Lee Memorial Health System Policy "Violence in the Workplace" calls for a prompt investigation in response to reports of threats or actual violent activity. Security Officer Sherwood, who interviewed both Ms. Hammer and Ms. Goines, had no training in sexual assault and testified that he was unaware of any Cape Coral Hospital policies regarding prevention or investigation of violent crimes, and denied ever receiving any such policies (pg. 15, Sherwood deposition). System Investigator Rafael Ortiz, in his deposition, acknowledges that he had minimal prior experience or education in investigating sex crimes: "a webinar...here or there" and no training in interviewing sexual assault victims (pg. 28, Ortiz deposition). He did not become involved in the Hammer matter, noting it "was handled by Risk Management." (pg. 46, Ortiz deposition).

Lee Health System Policy & Procedure "Identification and Reporting of Alleged or Suspected Abuse, Neglect, or Exploitation or Vulnerable Adults," states that "assessments [of suspected abuse] should be conducted in accordance with the System's responsibility for collecting, retaining, and safeguarding of evidence." Security Officer Sherwood testifies that he did not (and still does not) believe Ms. Hammer, and acknowledges that he made no effort to preserve evidence at the crime scene, despite Ms. Hammer's request. In her deposition, when asked who is responsible for preserving evidence, Risk Manager Pam Palmerton replies, "I don't know. Security, I am assuming." (pg. 41).

Despite the hospital's policies regarding treatment of potential victims of sexual assault, the hospital failed to respond to phone calls from the patient's mother and boyfriend regarding her assault. In fact, the hospital's first contact with the police the night of the allegation by Ms. Hammer was not to request assistance for Ms. Hammer, but rather to report her boyfriend for "harassing" the hospital operator. Only later were the police contacted regarding Ms. Hammer's complaint. The hospital then conducted a background check on the patient's boyfriend.

The hospital reported to the Department of Health that they had performed an investigation, the report having been made within 24 hours of the allegation. Ms. Palmerton, Risk Manager, sent a "form letter" notification on March 18, 2015 which read "LMHS conducted an investigation into the allegations against

Mr. Hechavarria, and we were unable to validate Ms. Hammer's claim." (Palmerton deposition, pg. 122). Yet, Mr. Hechavarria's colleagues were never interviewed. Staff members were instructed not to speak about the incident so as not to risk harming Mr. Hechavarria's reputation. It is unclear what, if anything constituted this "investigation" by the hospital. It did not include any effort to contact area police departments (in his county of residence, for example) to see if Mr. Hechavarria had any history of arrests or restraining orders. In her deposition, Risk Manager Pam Palmerton acknowledges that her "investigation" did not include review of Mr. Hechavarria's personnel file or a background check, indicating that this would be done by "either HR or security. I'm not really sure." (pg. 39). Ms. Palmerton also acknowledges that she cannot identify the head of the Human Resources department.

Ms. Palmerton denies that the hospital should have obtained the Police Department's report prior to advising the Department of Health that they had concluded the allegations could not be substantiated: "We didn't make a determination. We just didn't believe that she was being truthful." (Palmerton Deposition, pg. 131). She also defends her decision to not interview Mr. Hechavarria's coworkers due to concerns that this "taints other people's impressions of that nurse…" (pg.109).

Lee Health System's own website defines rape as "a sexual act forced on a person against his or her will." It further indicates that "Victims of rape should be helped to understand that what happened was not their fault," however Ms. Palmerton, in her deposition, acknowledges that she does not recall telling either Ms. Hammer or Ms. Goines this.

Cape Coral Hospital allowed Mr. Hechavarria to return to work within ten days following Ms. Hammer's allegation, long before the legal process had been concluded. He was allowed to return to work before Ms. Hammer had even been interviewed by Detective Montesino-Mena, and before Mr. Hechavarria had presented himself for an interview with the Detective.

Lee Memorial Health System's Policy "Correction Action Process" defines "crisis leave" and further reads "An investigation of the situation will be conducted immediately. The events leading up to the crisis leave are documented…" There has been no evidence presented thus far that any investigation of the allegations which led to Mr. Hechavarria's "crisis leave" took place, much less that the investigation was documented or any results acted upon.

In her deposition, Risk Manager Debra Wiles testifies that she is unaware of any committee (grievance or other) which would investigate an allegation of sexual assault, and that the Risk Manager (in this case Pam Palmerton) is authorized to make the final determination regarding the validity of an assault claim (pg. 37-38, Wiles second deposition).

In his deposition, Mr. Hechavarria states that following Ms. Hammer's allegations, he underwent no additional education regarding policies and procedures, was not interviewed by System Investigator Mr. Ortiz (pg. 125), and was unaware of any grievance committee investigation (pgs. 121-122). Both Ms. Rigot and Ms. Wiles acknowledge in their depositions that Lee Memorial Health System has no policies which would call for additional background investigation, supervision, re-education or discipline of a staff member accused of assaulting a patient. Wiles further testifies that new employees are told of a policy on sexual assault and are encouraged to access it on the health system's intranet, but that there is no mechanism in place to determine whether or not an employee has in fact read the organization's policy.

Further, despite DNV GL Healthcare standards which call for written response as part of the hospital's grievance process, neither patient received written response to their complaints and there has been no evidence presented to date of any investigation by the hospital into Ms. Hammer's allegations. Ms.

Sharon Zeller, Mr. Hechavarria's direct supervisor on 2 East, testifies in her deposition that she was unaware of an internal grievance committee or process (pg. 48).

Perhaps most significantly, once Mr. Hechavarria returned to work from "crisis leave" no precautions were taken to protect patients. This appears to be in direct violation of the Lee Memorial Health System's policy "Sexual Abuse Prevention and Reporting Risk Management," which states that "Patients in the Lee Memorial Health System shall be protected from sexual abuse to the greatest extent reasonably possible, in accordance with statutory requirements." Cape Coral Hospital, specifically its nursing leadership, subsequently failed to protect patients by neglecting to provide adequate and appropriate supervision of Mr. Hechavarria following Ms. Hammer's allegation of assault.

An excerpt from the "Employee Relations Database" shows that Cape Coral / Lee Memorial missed or avoided every opportunity to protect its patients. In a report "opened" on 3-17-2015 and "closed" on 3-20-2015, a recommendation was considered to move Mr. Hechavarria to the day shift, to monitor him, and to document this on his employee performance record.

In the same document, an excerpt dated 7-18-2016 recommended that Mr. Hechavarria be kept off work until the Cape Coral Police Department had concluded its investigation.

No action was taken on these recommendations. Mr. Hechavarria was not assigned to care for only male patients, or required to have a female staff person with him when examining female patients, or transferred to a day shift where the presence of a greater number of hospital personnel, medical staff and visitors would have limited Mr. Hechavarria's predatory opportunities. Indeed, the hospital seemed far more concerned about protecting Mr. Hechavarria than the patients he is accused of assaulting.

**Summary:**

Cape Coral Hospital fell below industry standards, including the requirements DNV GL Healthcare, in its failure to provide a safe environment of patient care; its negligence in hiring and supervision of employees; and its inadequate response to allegations of sexual assault. Cape Coral / Lee Memorial demonstrated carelessness and indifference to patient safety.

As a result of Cape Coral Hospital's negligence in these areas, Brianna Hamer and Donia Goines sustained unnecessary trauma, injury and suffering. I reserve the right to amend this opinion, should additional information become available. All the opinions set forth herein are to a reasonable degree of administrative and professional certainty.

Very truly yours,

Fred Hyde, MD


Attachments:   Four exhibits

11