UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONIA GOINES,

        Plaintiff,

v.                              Case No:  2:17-cv-656-FtM-29CM

LEE MEMORIAL HEALTH SYSTEM,
d.b.a. Cape Coral Hospital
and JEOVANNI HECHAVARRIA,

        Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on defendant Lee Memorial
Health Systems' Motion for Summary Judgment (Doc. #97) filed on
November 5, 2018.  Plaintiff Donia Goines filed a Response (Doc.
#119) on December 10, 2018.  For the reasons that follow, the
motion is denied.

Plaintiff alleges she was sexually assaulted by defendant
Jeovanni Hechavarria at a hospital operated by Lee Memorial.
Plaintiff filed an Amended Complaint on April 25, 2018, asserting
a section 1983 claim and several common law negligence claims
against Lee Memorial, as well as a common law assault and battery
claim against Hechavarria.  (Doc. #31.)  Lee Memorial now moves
for summary judgment on the five counts in which it is a defendant.
(Doc. #97.)

**I.**

**A. Factual Background[1]**

Lee Memorial, a public health care system codified under Florida law, hired Hechavarria as a night nurse for the Cape Coral Hospital in the fall of 2014. (Doc. #31, p. 2; Doc. #120-22, pp. 761-62.) Prior to doing so, Lee Memorial conducted a background check on Hechavarria, searching for criminal or sex offender records. (Doc. #98-1, p. 8.) None of these searches revealed any arrests, charges, or convictions.[2] (Id. pp. 8-9.)

**1) First Sexual Assault Allegation against Hechavarria**

On the night of March 17, 2015, non-party Brianna Hammer was a patient at the Cape Coral Hospital after being admitted for suspected food poisoning and flu illness. (Doc. #122-1, p. 3.) Hechavarria was the assigned night nurse and, according to Hammer,

---

[1] The background facts are either undisputed or read in the light most favorable to plaintiff as the nonmoving party. However, these facts, accepted at the summary judgment stage of the proceedings, may not be the "actual" facts of the case. See Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925 n.3 (11th Cir. 2000).

[2] Plaintiff has produced evidence that prior to being hired by Lee Memorial, Hechavarria had been subject to multiple temporary restraining orders due to allegations of domestic violence made by Hechavarria's former wife. (Doc. #120-14, p. 538; Doc. #120-15, p. 545; Doc. #120-16, p. 551; Doc. #120-17, p. 561.) Per Lee Memorial, this information was unknown at the time Hechavarria was hired and would not have been considered anyways because there was never a legal determination that Hechavarria committed the alleged actions. (Doc. #120-22, pp. 769-72.)

engaged in sexually inappropriate behavior on multiple occasions throughout the night. (Id. p. 3.) For example, Hammer accused Hechavarria of touching her breasts in an inappropriate manner and touching her genitals under her gown. (Id.) Hechavarria also allegedly pulled down Hammer's underwear and looked at her vagina and anus. (Id. p. 4.) Hammer stated that at one point during the night, she awoke to find Hechavarria standing over her with his fingers inside her vagina. (Id.) As best Hammer can recall, Hechavarria was touching his penis at the same time. (Id.)

Hammer reported the alleged sexual assault to Lee Memorial personnel, as well as an officer from the Cape Coral Police Department who responded to the hospital. (Id. p. 5.) Hammer informed a hospital supervisor and hospital security officer that Hechavarria's gloves and gown, which he had been wearing during the alleged assault, were in the room's trash can. (Id. pp. 4-5.) Nonetheless, the evidence was not collected.[3] (Id. p. 5.)

---

[3] Lee Memorial has a "Sexual Abuse Prevention and Reporting Risk Management" policy, the stated purpose of which is "[t]o protect patients from sexual abuse and provide for reporting of sexual misconduct in accordance with Florida law." (Doc. #120-6, p. 60; Doc. #120-7, p. 63.) In outlining the procedure for a report of sexual misconduct, the policy states, "Care shall be taken to preserve any physical evidence, including evidence of semen, blood, or other materials." (Doc. #120-6, p. 61; Doc. #120-7, p. 64.) According to an official, Lee Memorial's practice is to secure evidence until law enforcement arrives, "at which point the decisions regarding any forensic evidence is for law enforcement to make." (Doc. #98-9, p. 189.) The official also stated that the gloves and gown were available to the police but the responding officer "chose not to secure those items for

Hammer's complaint was investigated by Lee Memorial's risk manager. (Doc. #98-9, pp. 187-88.) The manager spoke with Hammer and believed she was being untruthful during the interview. (Id. p. 188.) The manager concluded Hammer had "made up the allegation." (Id. at 189.) In coming to this determination, the manager relied in part on findings by the responding police officer, who allegedly found Hammer's account inconsistent and determined she was making up the allegation. (Id.) The manager was able to complete the investigation "relatively quickly, due in part to the untruthfulness" of Hammer.[4] (Id.)

On March 18, 2015, the day after Hammer accused Hechavarria of sexually assaulting her, the manager reported the allegation to the Florida Department of Health via letter. (Doc. #120-29, p.

_____

testing." (Id.) However, plaintiff has produced testimony from the hospital security officer suggesting the police officer may not have been informed of the existence of the potential physical evidence. (Doc. #120-12, pp. 304-05.)

[4] Lee Memorial's "Sexual Abuse Prevention and Reporting Risk Management" policy provides that if a risk manager becomes aware that the person reporting sexual misconduct "has done so falsely and with malice or with the intent to discredit or harm," the information should be reported to Lee Memorial's chief legal officer "who shall, to the fullest extent possible, seek prosecution of the offender as provided by law." (Doc. #120-6, p. 60; Doc. #120-7, p. 65.) The risk manager has acknowledged she did not inform the chief legal officer that she believed Hammer made a false accusation against Hechavarria. (Doc. #98-24, p. 792.) Hammer has since filed suit against Hechavarria and Lee Memorial for claims similar to those raised by plaintiff, and the case is currently pending before this Court. See Hammer v. Lee Mem'l Health Sys., 2018 WL 5078909 (M.D. Fla. Oct. 18, 2018).

1889.)  The letter notes that Lee Memorial had conducted an investigation and was unable to validate Hammer's claims.  (Id.)

The record indicates Lee Memorial completed its investigation before law enforcement completed theirs.  Hammer spoke with a Cape Coral Police Department detective approximately ten days after the alleged sexual assault.  (Doc. #120-30, p. 1905.)  That detective informed Lee Memorial a couple weeks after the accusation that the investigation was ongoing.[5]  (Id. pp. 1911-12, 1963-67.)

On the day of the alleged assault, Lee Memorial officials determined Hechavarria should be placed on paid leave.  (Doc. #120-27, p. 1684.)  The decision to place Hechavarria on leave was based in part on threatening posts Hammer's boyfriend allegedly made on Facebook.  (Id.)  While Hechavarria was to be on leave until the police investigation was completed, (id.), Hechavarria returned to work soon after, (Doc. #120-18, p. 677.)  As Lee Memorial had determined the allegation was unsubstantiated, no discipline was imposed.  (Doc. #98-8, p. 185.)  Additionally, no changes were made to Hechavarria's access to female patients and he was not

---

[5] Lee Memorial disputes this, stating it did not learn Hammer's accusation was assigned to a detective until during discovery of the instant case.  (Doc. #97, p. 7.)  Per the record, the detective subsequently sent the case to the Twentieth Judicial Circuit's State Attorney Office for review, which determined there was insufficient evidence to charge Hechavarria for sexual battery.  (Doc. #120-30, p. 1956; Doc. #120-32, p. 2044.)

required to undergo any additional supervision or training.[6] (Doc. #120-37, p. 2373.) Finally, Lee Memorial did not conduct any further investigation into Hechavarria's background as a result of the allegation. (Doc. #120-18, p. 680; Doc. #120-39, pp. 2424-25, 2452.)

### 2) Hechavarria's Arrest for Unrelated Battery

On July 8, 2016, Hechavarria was arrested by the Charlotte County Sheriff's Office for battery. (Doc. #120-46, pp. 2849-50.) The alleged victim of the battery was Hechavarria's brother. (Id.) Per Hechavarria, he informed his Lee Memorial supervisor of the arrest the next day he went to work. (Doc. #120-18, pp. 617-18.) Hechavarria was not suspended in response, (Id. p. 618), and it does not seem Lee Memorial conducted any investigation into the matter.[7]

---

[6] Lee Memorial's "Violence in the Workplace" policy provides that Lee Memorial "investigates acts and/or threats of violence, direct or indirect, toward employees and non-employees both on and off [Lee Memorial] premises." (Doc. #120-8, p. 67.) The policy also provides that basic training and education on "disruptive behavior" is conducted annually and "[a]dditional in-services are conducted by [Lee Memorial] Security following an investigation." (Id.)

[7] Lee Memorial's "Workplace Personal Safety, Security and Violence Prevention" policy states, "If a conviction and/or arrest of a violent nature is disclosed or reported to [Lee Memorial] it will be investigated by the Threat Assessment Team. Based on the findings and the employee's position it may result in corrective action up to and including termination." (Doc. #120-47, p. 2853.) Lee Memorial's corporate representative has acknowledged the policy requires an investigation when an employee is arrested for a battery. (Doc. #120-41, pp. 2744-45.) However, a Threat

**3) Second Sexual Assault Allegation against Hechavarria**

On July 15, 2016, plaintiff was admitted to the Cape Coral Hospital because her gallbladder was bursting. (Doc. #120-49, p. 3011.) The following evening, Hechavarria was plaintiff's assigned nurse and, according to plaintiff, inappropriately touched her on multiple occasions during the night. (Id. pp. 3019-20, 3024-36.) Per plaintiff, on Hechavarria's fourth visit to the room, plaintiff threatened to scream and Hechavarria allegedly told her he had her address and if she told anyone, he would come get her. (Id. p. 3036.) According to plaintiff, Hechavarria placed his gloved fingers inside her vagina and then proceeded to rape her despite her pleas to stop.[8] (Id. pp. 3036-44.) Hechavarria allegedly told plaintiff that he would not get in trouble because nobody would believe her. (Id. p. 3040.)

The following day, plaintiff informed a different nurse about the alleged sexual assault. (Id. pp. 3056-57.) A hospital security officer spoke with plaintiff and the police were called to the hospital. (Id. pp. 3058-59.) Plaintiff also spoke to the

---

Assessment Team was never assembled after Hechavarria's arrest. (Doc. #120-25, p. 1294.)

[8] Plaintiff testified in a deposition that Hechavarria wiped himself off with a towel after the rape. (Doc. #120-49, p. 3037.) The record contains a Florida Department of Law Enforcement laboratory report purportedly matching Hechavarria's DNA to semen found on a towel. (Doc. #120-51, pp. 3168-69; Doc. #120-52, pp. 3171-72.)

same Lee Memorial risk manager who investigated the Hammer allegation. (Id. p. 3060; Doc. #98-9, p. 190.) Hechavarria was initially placed on leave while Lee Memorial investigated the allegation but was subsequently terminated from employment approximately four months later.[9] (Doc. #98-9, p. 190; Doc. #120-25, p. 1257.) Hechavarria has since been arrested and criminally charged with three counts of sexual battery, two of which relate to Hammer and plaintiff's allegations.[10] (Doc. #120-33, pp. 2045-47.)

---

[9] The record contains disputed explanations for the termination of Hechavarria's employment. One Lee Memorial official testified that Hechavarria was let go because he could not return to work until the investigation was resolved and could not be kept on leave indefinitely. (Doc. #98-19, pp. 413-14.) However, another official testified that Hechavarria was terminated due to plaintiff's allegation, which constituted "gross misconduct." (Doc. #120-41, p. 2659.) Lee Memorial's termination report for Hechavarria also states he was terminated for gross misconduct, and describes the circumstances leading to termination as "[p]atient allegation of sexual assault rape which is being investigated by [Cape Coral Police Department]." (Doc. #120-50, p. 3167.) Interestingly, while Lee Memorial's "Corrective Action Policy" provides that an employee may be terminated when he *commits* an offense of gross misconduct, it does not provide for termination when there is merely an allegation of wrongdoing. (Doc. #120-45, p. 2845.)

[10] Per the Twentieth Judicial Circuit's docket, Hechavarria was originally charged with only one count of sexual battery, as it related to plaintiff's allegation. Approximately ten months later, the information was amended to include two additional sexual battery charges, one of which corresponds with Hammer's allegation. See United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (recognizing that a court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings).

**B. Procedural Background**

On April 25, 2018, plaintiff filed a six count Amended Complaint against Hechavarria and Lee Memorial. (Doc. #31.) Counts One through Five of the Amended Complaint are against Lee Memorial and allege the following: (1) violation of 42 U.S.C. § 1983; (2) negligent retention; (3) negligent supervision; (4) negligence; and (5) negligent hiring. (Id. pp. 5-13.) Count Six is against Hechavarria for assault and battery. (Id. pp. 13-14.)

On November 5, 2018, Lee Memorial filed its Motion for Summary Judgment, arguing it is entitled to summary judgment as to the first five counts in the Amended Complaint. (Doc. #97.)

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citation omitted). A fact is "material" if it may affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law.'"  <u>Hickson</u>, 357 F.3d at 1260 (quoting <u>Anderson</u>, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the nonmoving party.  <u>Tana v. Dantanna's</u>, 611 F.3d 767, 772 (11th Cir. 2010).  However, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment."  <u>St. Charles Foods, Inc. v. America's Favorite Chicken Co.</u>, 198 F.3d 815, 819 (11th Cir. 1999) (quoting <u>Warrior Tombigbee Transp. Co. v. M/V Nan Fung</u>, 695 F.2d 1294, 1296-97 (11th Cir. 1983)).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment."  <u>Allen v. Bd. of Pub. Educ. for Bibb Cty.</u>, 495 F.3d 1306, 1315 (11th Cir. 2007).

**III.**

**A. Count One** – **Section 1983**

In the first count of the Amended Complaint, plaintiff alleges Lee Memorial violated 42 U.S.C. § 1983 by depriving her of "the constitutional right to personal security and bodily integrity, including the right to be free from sexual abuse and sexual assault." (Doc. #31, p. 5.)  In its motion, Lee Memorial argues it is entitled to summary judgment on this claim because (1) it is not considered a "person" under section 1983, and therefore cannot

be sued, and (2) even if it is considered a "person," plaintiff cannot establish Lee Memorial had a policy or custom that caused a deprivation of plaintiff's constitutional rights. (Doc. #97, pp. 12-18.) Each of these arguments will be addressed in turn.

**1) Whether Lee Memorial is a "person" under section 1983**

Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. In order to succeed on a section 1983 claim, "a plaintiff must show that he or she was deprived of a federal right *by a person* acting under color of state law." <u>Taylor v. Dep't of Pub. Safety</u>, 142 Fed. App'x 373, 374 (11th Cir. 2005) (quoting <u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1303 (11th Cir. 2001)). While section 1983 provides a federal forum to remedy many deprivations of civil liberties, "it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66 (1989).

In its motion, Lee Memorial claims it is an agency of the state. (Doc. #97, p. 13.) Since a state agency is not considered a "person" for purposes of section 1983, Lee Memorial argues it cannot be sued and is thus entitled to summary judgment. (<u>Id.</u>) The Court disagrees. Lee Memorial is a healthcare authority created by the Florida Legislature as a special purpose unit of

local government, <u>F.T.C. v. Hosp. Bd. of Dirs. of Lee Cty.</u>, 38 F.3d 1184, 1188 (11th Cir. 1994) (citing Ch. 63-1552 § 1, Laws of Fla.), and Lee Memorial represents itself to the public as such, <u>see</u> http://www.leehealth.org/about/LegalStructure.asp ("Formerly known as Hospital Board of Directors of Lee County, Lee Memorial Health System is a special purpose unit of local government."). Local government entities are considered a "person" for purposes of section 1983. <u>See</u> <u>Monell v. Dep't of Social Servs. of N.Y.</u>, 436 U.S. 658, 690 (1978). Therefore, the Court finds that Lee Memorial has failed to demonstrate it is not a "person" for purposes of section 1983.

**2) Whether plaintiff can establish that the constitutional deprivation resulted from a custom, policy, or practice of Lee Memorial**

Plaintiff suggests that for purposes of an Eleventh Amendment immunity analysis, Lee Memorial should be treated as a municipality. (Doc. #119, p. 26); <u>see</u> <u>Magula v. Broward Gen. Med. Ctr.</u>, 742 F. Supp. 645, 649 (S.D. Fla. 1990) (concluding "that the hospital district is more like a municipality than like an arm of the state"). Lee Memorial argues that even if it is treated as a municipality, it would still be entitled to summary judgment because plaintiff cannot show the alleged constitutional violation

resulted from a custom, policy, or practice of Lee Memorial.[11]
(Doc. #97, p. 13.)

When a local governmental entity is the subject of a section
1983 suit, the plaintiff bears the burden of showing that the
constitutional derivation "resulted from a custom, policy, or
practice of the municipality." Wideman v. Shallowford Cmty. Hosp.,
Inc., 826 F.2d 1030, 1032 (11th Cir. 1987) (citations omitted);
see also Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th
Cir. 1997) ("A municipality may be held liable under § 1983 if the
plaintiff shows that a 'custom' or 'policy' of the municipality
was the 'moving force' behind the constitutional deprivation."
(citing Monell, 436 U.S. at 690-94)).  A policy is a decision that
is officially adopted by the municipality, or created by an
official of such rank that he or she could be said to be acting on
behalf of the municipality.  Sewell, 117 F.3d at 489 (citing Brown
v. City of Fort Lauderdale, 923 F.2d 1474, 1479-80 (11th Cir.
1991)).  A custom is a practice that is so settled and permanent
that it takes on the force of law.  Id. (citing Monell, 436 U.S.
at 690-91).

---

[11] For purposes of the Motion for Summary Judgment only, Lee
Memorial assumes plaintiff can establish that "personal security
and bodily integrity" are constitutional rights, and that
Hechavarria committed the sexual assault.  (Doc. #97, p. 13 n.8.)

Because a municipality will rarely have an express written or oral policy of inadequately training or supervising its employees, the Supreme Court has also provided that a plaintiff may prove a policy by showing that the municipality's failure to train evidenced a "deliberate indifference" to the rights of its inhabitants. Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing City of Canton v. Harris, 489 U.S. 378, 388-89 (1989)). To establish "deliberate indifference," a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action. Id. (citations omitted). Without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise. Id. at 1351.

In the Amended Complaint, plaintiff alleges Lee Memorial had policies of inadequate supervision regarding Hechavarria and inadequate investigation regarding complaints of sexual abuse and assault alleged against him, and that such policies constituted deliberate indifference to the rights of persons Hechavarria encountered.[12] (Doc. #31, pp. 5-7.) Lee Memorial argues in its

---

[12] There is an inconsistency between plaintiff's Amended Complaint and its Response to the Motion for Summary Judgment. In the Amended Complaint, plaintiff alleges Lee Memorial had a policy of failing to supervise Hechavarria and investigate complaints made against him. (Doc. #31, p. 5.) However, in the Response, plaintiff seems to allege a broader policy, noting Lee Memorial

motion that because plaintiff cannot establish Lee Memorial had a policy or custom of failing to supervise Hechavarria or investigate sexual assault complaints against him, plaintiff cannot demonstrate municipal liability under section 1983. (Doc. #97, pp. 13-18.) The crux of the motion's argument is that plaintiff cannot demonstrate Lee Memorial was put on notice of a need for improved supervision or investigation regarding sexual assault allegations. (Id. pp. 14-18.)

In the context of deliberate indifference claims, "[e]stablishing notice of a need to train or supervise is difficult." Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, Fla., 637 F.3d 1178, 1189 (11th Cir. 2011). A plaintiff may demonstrate notice "by showing a 'widespread pattern of prior abuse' or even a single earlier constitutional violation." Id. (quoting Gold, 151 F.3d at 1351). Here, plaintiff attempts both, relying on investigative records from prior sexual assault allegations against other Lee Memorial employees, as well as

_____

knew of a need to supervise and investigate "its accused employees, especially in the area of inappropriate sexual conduct towards patients." (Doc. #119, p. 29.) To the extent plaintiff is raising a new claim not made in the Amended Complaint, "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004); see also Bayou Lawn & Landscape Servs. v. Johnson, 173 F. Supp. 3d 1271, 1281 (N.D. Fla. 2016) (declining to consider plaintiff's argument in a responsive brief on summary judgment because it was not the same as the argument in the complaint).

Hammer's allegation against Hechavarria. (Doc. #119, pp. 27-33.)
The Court finds it is unnecessary to determine whether the prior
allegations constitute a "widespread pattern" because a genuine
issue of material fact exists as to whether Lee Memorial was on
notice based solely on the previous allegation against
Hechavarria.[13]

Based on Hammer's allegation, which is taken as true for
purposes of summary judgment, Lee Memorial had notice of
Hechavarria's prior sexual assault against a patient. The evidence
indicates Lee Memorial officials determined Hammer was lying and
the investigation was concluded in one day, before the case was
assigned to a Cape Coral Police Department detective. The evidence
also suggests Hechavarria was permitted to return to work soon
after the allegation with no increased supervision or additional
training, and with unrestricted access to female patients. Viewing
the evidence and inferences in the light most favorable to

---

[13] Lee Memorial argues that plaintiff cannot rely on the
previous accusation against Hechavarria to demonstrate deliberate
indifference because "the test is not whether it happened one time,
but rather whether there was widespread abuse of patient's [sic]
constitutional rights that required [Lee Memorial] to take
action." (Doc. #97, p. 16.) While it is true that "proof of a
single, isolated incident of unconstitutional activity generally
is not sufficient to impose municipal liability," Wideman, 826
F.2d at 1032 (citations omitted), the Eleventh Circuit has
specifically held a plaintiff may demonstrate notice of a need for
training or supervision by showing "even a single earlier
constitutional violation," Am. Fed'n, 637 F.3d at 1189.

plaintiff, the Court finds a jury may conclude the Hammer allegation alone was sufficient to put Lee Memorial on notice of a need for improved supervision and investigation. See Franklin v. Tatum, 627 Fed. App'x 761, 76566 (11th Cir. 2015) (finding a reasonable jury could conclude jail administrator was on notice of transportation officer's criminal behavior after allegation of sexual assault, and was deliberately indifferent to a serious risk of constitutional injuries when insufficient action was taken in response).[14]

Finally, Lee Memorial makes a brief argument that plaintiff cannot demonstrate any deficient policies were the "moving force" behind the constitutional violations. (Doc. #97, p. 17.) However, "[t]he presence of the requisite causation in a case brought under 42 U.S.C. § 1983 is normally a question of fact for the jury." Jackson v. Stevens, 694 F. Supp. 2d 1334, 1336 n.1 (M.D. Ga. 2010); see also Rivas v. City of Passaic, 365 F.3d 181, 193 (3d Cir. 2004) ("While we are aware that a Section 1983 plaintiff must demonstrate that the defendant's actions were the proximate cause of the violation of his federally protected right, the presence of the requisite causation is normally a question of fact for the jury."

---

[14] While Franklin involved supervisory liability under section 1983 rather than municipality liability, the Court finds it instructive.

(citation omitted)).  Therefore, the Court finds summary judgment
is inappropriate.

**B. Counts Two and Three - Negligent Retention and Negligent Supervision**

In the second and third counts of the Amended Complaint,
plaintiff alleges Lee Memorial was negligent in retaining and
supervising Hechavarria after the Hammer incident.  (Doc. #31, pp.
7-10.)  "The terms 'negligent retention' and 'negligent
supervision' have the same meaning and are used interchangeably by
Florida courts." Alcantara v. Denny's Inc., 2006 WL 8439596, *5
n.8 (M.D. Fla. Jan. 19, 2006) (citing Malicki v. Doe, 814 So. 2d
347, 362 n.15 (Fla. 2002)).  Negligent retention and negligent
supervision occur when, during the course of employment, the
employer becomes aware or should have become aware of problems
with an employee that indicated his unfitness, and the employer
fails to take further action such as investigating, discharge, or
reassignment. Degitz v. S. Mgmt. Servs., Inc., 996 F. Supp. 1451,
1461 (M.D. Fla. 1998) (citations omitted); Alcantara, 2006 WL
8439596, *5 (citation omitted).  In order to be liable, the
employer must first owe a duty to the plaintiff, the breach of
which must be the proximate cause of the plaintiff's harm. Degitz,
996 F. Supp. at 1461 (citation omitted); see also Gillis v. Sports
Auth. Inc., 123 F. Supp. 2d 611, 617 (S.D. Fla. 2000) ("Only when
an employer has somehow been responsible for bringing a third

person into contact with an employee, whom the employer knows or should have known is predisposed to committing a wrong under circumstances that create an opportunity or enticement to commit such a wrong, should the law impose liability on the employer." (citation omitted)). The ultimate question of liability to be decided is "whether it was reasonable for an employer to permit an employee to perform his job in light of information about the employee which [the] employer should have known." Gillis, 123 F. Supp. 2d at 617 (quoting Sullivan v. Lake Region Yacht & Country Club, 1997 WL 689799 (M.D. Fla. 1997)).

In the Amended Complaint, plaintiff alleges Lee Memorial (1) had a duty to terminate or discipline unfit nurses, and (2) breached that duty by failing to discharge, terminate or reassign Hechavarria, and by allowing him to continue to have unsupervised access to female patients, after being put on notice of his history of sexual abuse and assault. (Doc. #31, pp. 8, 9-10.) Plaintiff asserts that she was physically and sexually abused and assaulted as a proximate result of Lee Memorial's actions. (Id. pp. 8, 10.) In its motion, Lee Memorial argues summary judgment should be granted because (1) it is entitled to sovereign immunity, and (2) even if sovereign immunity does not apply, plaintiff cannot establish the essential elements of the claims. (Doc. #97, pp. 31-37.) The Court will address these arguments in turn.

**1) Whether Lee Memorial is entitled to sovereign immunity**

Lee Memorial's first argument is that it is entitled to sovereign immunity with regards to plaintiff's negligent retention claim. (Doc. #97, p. 32.) The State of Florida, including its subdivisions and municipalities, are generally immune from tort liability.[15] <u>Ireland v. Prummell</u>, 2018 WL 3956204, *10 (M.D. Fla. Aug. 17, 2018) (citing Fla. Const., Art. X, § 13). However, Florida has waived its tort immunity under circumstances in which the state agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of the state. § 768.28(1), Fla. Stat. Additionally, Lee Memorial has agreed that it "may sue and be sued." Ch. 2000-439 § 10(2), Laws of Fla. Nonetheless, even if the claim contains sufficient allegations of tort liability under which a private person would be liable, "the waiver of sovereign immunity would still not apply if the challenged acts of the state agent were 'discretionary' governmental acts rather than merely 'operational' ones." <u>Lewis v. City of St. Petersburg</u>, 260 F.3d 1260, 1262 (11th Cir. 2001).

Lee Memorial argues plaintiff's negligent retention claim is based upon an assertion that Lee Memorial's investigation into the Hammer incident was insufficient. (Doc. #97, pp. 31-32.) Lee

---

[15] For purposes of this issue, the Court will assume Lee Memorial qualifies as a subdivision of the State of Florida and would therefore qualify for sovereign immunity.

Memorial asserts that the scope and manner in which it conducts investigations is a discretionary function, and therefore it is entitled to sovereign immunity. (Id. at 32.) However, as this Court has previously noted, "There is no sovereign immunity barrier to stating a claim against a government entity for negligent retention or supervision." Sada v. City of Altamonte Springs, 2009 WL 3241984, *4 (M.D. Fla. Oct. 5, 2009) (citing Slonin v. City of West Palm Beach, 896 So. 2d 882 (Fla. 4th DCA 2005); see also Ireland, 2018 WL 3956204, *10 ("[M]ore than one Florida court has explicitly held '. . . there is no sovereign immunity barrier to making a claim against a governmental agency for negligent retention or supervision.'" (quoting Dickinson v. Gonzalez, 839 So. 2d 709, 713 (Fla. 3d DCA 2003)). Therefore, the Court rejects Lee Memorial's argument that it is entitled to sovereign immunity on plaintiff's negligent retention claim.

**2) Whether plaintiff can establish the essential elements of the claims**

As noted previously, liability attaches for a negligent retention or negligent supervision claim "when an employer (1) knows or should know about the offending employee's unfitness and (2) fails to take appropriate action." Martinez v. Pavex Corp., 422 F. Supp. 2d 1284, 1298 (M.D. Fla. 2006). Lee Memorial argues it is entitled to summary judgment on both counts because plaintiff

cannot establish either of the two prongs above. (Doc. #97, pp. 32-34, 37-38.)

Lee Memorial first argues that there was nothing to indicate that Hechavarria was unfit for continued employment. (Id. pp. 33, 36-37.) Viewing the evidence in a light most favorable to plaintiff, the Court disagrees. Approximately sixteen months before plaintiff checked into the Cape Coral Hospital, Hammer informed Lee Memorial that Hechavarria had sexually assaulted her while working on his night shift. Additionally, less than nine days before Hechavarria allegedly raped plaintiff, he informed his supervisor he had been arrested for battery. The Court finds these incidents were sufficient to put Lee Memorial on notice of Hechavarria's propensity for sexual assault and/or violence. Cf. Martinez, 422 F. Supp. 2d at 1299 (granting summary judgment on negligent supervision and retention claim because plaintiff failed to submit evidence demonstrating employer had knowledge of employee's propensity to assault or batter others); see also Degitz, 996 F. Supp. at 1461 ("An employer is liable for the willful tort of his employee, committed against a third party, if he knew or should have known that the employee was a threat to others.").

Lee Memorial next argues that plaintiff cannot prove it failed to take appropriate action and, therefore, cannot prove the second prong of a negligent retention or negligent supervision claim.

(Doc. #97, pp. 33, 37.)  Once again, viewing the evidence in a light most favorable to plaintiff, the Court disagrees.  While Lee Memorial has offered evidence that it investigated Hammer's allegations, there is also evidence that the investigation was concluded in less than twenty-four hours and may not have conformed with Lee Memorial's policies regarding preservation of evidence, post-investigation training and education, and prosecution of false accusations.  Therefore, the Court finds that whether Lee Memorial's investigation was sufficient to constitute "appropriate action" is a question for the jury.  See Samedi v. Miami-Dade Cty., 134 F. Supp. 2d 1320, 1253 (S.D. Fla. 2001) (denying summary judgment on negligent retention claim because "a question exists as to the reasonableness of the investigative and/or corrective action that County undertook once it was on notice").

Apart from the Hammer allegation, there is also evidence that Lee Memorial failed to investigate Hechavarria's battery arrest. Hechavarria testified at a deposition that he informed his direct supervisor of the arrest the next day he worked, but there is nothing in the record to suggest Lee Memorial took any action in response, despite a policy requiring an investigation.  Lee Memorial argues in its motion that it could not reasonably foresee Hechavarria would sexually assault a stranger based on the battery arrest.  (Doc. #97, p. 35.)  However, the issue is whether Lee Memorial knew or should have known of Hechavarria's unfitness and

failed to take appropriate action. Viewed in a light must favorable to plaintiff, Lee Memorial's lack of response to Hechavarria's arrest supports plaintiff's claim that Lee Memorial did not take appropriate action.[16] Accordingly, the Court finds it is inappropriate to grant summary judgment on the negligent retention and negligent supervision claims.

## C. Count Four – Negligence

In the fourth count of the Amended Complaint, plaintiff asserts a claim of ordinary negligence against Lee Memorial. (Doc. #31, pp. 10-11.) Plaintiff alleges (1) Lee Memorial had a duty to protect her against "reasonably foreseeable criminal acts committed" on its property by its employees or third parties, (2) Lee Memorial breached that duty by failing to take adequate steps to protect her from Hechavarria, and (3) Lee Memorial's breach resulted in plaintiff being sexually assaulted. (Id.) While framed as an ordinary negligence claim, the Court finds plaintiff is actually asserting a negligent security claim. See Nicholson

---

[16] To the extent Lee Memorial is arguing plaintiff cannot demonstrate Lee Memorial's failure to investigate the battery arrest was a proximate cause of plaintiff's harm, the Court finds that issue should be decided by a jury. See McCain v. Fla. Power Corp., 593 So. 2d 500, 504 (Fla. 1992) ("[T]he question of foreseeability as it relates to proximate causation generally must be left to the fact-finder to resolve. Thus, where reasonable persons could differ as to whether the facts establish proximate causation—i.e., whether the *specific* injury was genuinely foreseeable or merely an improbable freak—then the resolution of the issue must be left to the fact-finder.").

v. Stonybrook Apartments, LLC, 154 So. 3d 490, 494 (Fla. 4th DCA 2015) ("Ordinary negligence involves active negligence—meaning the tort-feaser actually does something to harm the injured party, whereas premises liability involves passive negligence—meaning the tort-feaser's failure to do something to its property resulted in harm to the injured party. As negligent security actions concern the landowner's *failure* to keep the premises safe and secure from foreseeable criminal activity, it follows that they fall under the umbrella of premises liability as opposed to ordinary negligence." (citation omitted)); see also Hammer, 2018 WL 5078909, *5 (determining identically alleged ordinary negligence claim was a re-allegation of separate negligent security claim).

In its motion, Lee Memorial first argues plaintiff cannot establish it had a duty to protect her from sexual assault because such an assault was not reasonably foreseeable. (Doc. #97, pp. 38-39.) The Court disagrees. As noted above, "negligent security cases fall under the auspices of premises liability as opposed to ordinary negligence." Nicholson, 154 So. 3d at 494. Under Florida law, a business owes invitees a duty to use due care to maintain its premises in a reasonably safe condition.[17] Banosmoreno v.

---

[17] A hospital patient is a business invitee under Florida law. See Post v. Lunney, 261 So. 2d 146, 147-48 (Fla. 1972) ("[A]n invitee is one who enters upon the premises of another for purposes connected with the business of the owner or occupant of the premises." (quotation and citation omitted)).

<u>Walgreen Co.</u>, 299 Fed. App'x 912, 913 (11th Cir. 2008) (citing <u>Stevens v. Jefferson</u>, 436 So. 2d 33, 34 (Fla. 1983)).  This includes the duty to protect customers from criminal attacks that are reasonably foreseeable.  <u>Id.</u> (citations omitted).

Foreseeability can be shown by two alternative means.  First, "a plaintiff may demonstrate that 'a proprietor knew or should have known of a dangerous condition on his premises that was likely to cause harm to a patron.'"  <u>Id.</u> (quoting <u>Stevens</u>, 436 So. 2d at 34).  Second, "a plaintiff can show that a 'proprietor knew or should have known of the dangerous propensities of a particular patron.'"  <u>Id.</u> (quoting <u>Stevens</u>, 436 So. 2d at 34).  Viewing the evidence in a light must favorable to plaintiff, the Court finds the Hammer incident and the battery arrest are sufficient to show Lee Memorial knew or should have known of Hechavarria's dangerous propensities.  <u>See</u> <u>Mulhearn v. K-Mart Corp.</u>, 2006 WL 2460664, *2 (M.D. Fla. Aug. 23, 2006) ("Where prior similar acts have been used to demonstrate foreseeability, the opinions suggest that violent crimes of any type are predictive of other violent crimes.").  Therefore, Hechavarria's alleged sexual assault was reasonably foreseeable and Lee Memorial had a duty to protect plaintiff from it.

Lee Memorial next argues that even if it had a duty to protect plaintiff from sexual assault, plaintiff cannot demonstrate (1) Lee Memorial breached that duty or (2) Lee Memorial's breach caused

plaintiff's harm. (Doc. #97, pp. 39-40.) Plaintiff alleges that Lee Memorial breached its duty to protect her from reasonably foreseeable criminal acts "by failing to take reasonable, necessary and adequate steps" to protect her from being sexually assaulted by Hechavarria.[18] (Doc. #31, p. 11.) She also alleges that the sexual assault by Hechavarria was the proximate result of Lee Memorial's breach. (Id.) The Court finds that whether Lee Memorial breached its duty to protect plaintiff and whether that breach, if any, was the proximate cause of the alleged sexual assault are matters for a jury to decide. See Garrison Retirement Home Corp. v. Hancock, 484 So. 2d 1257, 1262 (Fla. 4th DCA 1985) (noting that whether a duty was breached and whether the breach, if any, was the proximate cause of an accident "are traditional jury questions in tort actions"); see also St. Fort ex rel. St. Fort v. Post, Buckley, Schuh & Jernigan, 902 So. 2d 244, 250 (Fla. 4th DCA 2005) (noting proximate cause "is generally a jury question" and "[c]ircumstances under which a court may resolve proximate cause as a matter of law are extremely limited").

---

[18] In arguing Lee Memorial breached its duty, plaintiff relies in part on Lee Memorial's alleged failure to follow its own policies. (Doc. #119, pp. 39-40.) In the context of governmental tort litigation, a written policy or manual does not establish a legal duty vis-à-vis individual members of the public. Pollack v. Fla. Dep't of Highway Patrol, 882 So. 2d 928, 937 (Fla. 2004). However, such documents "may be instructive in determining whether the alleged tortfeasor acted negligently in fulfilling an independently established duty of care." Id.

Accordingly, Lee Memorial's request for summary judgment on plaintiff's negligence claim is denied.

### D. Count Five — Negligent Hiring

In the fifth count of the Amended Complaint, plaintiff alleges Lee Memorial was negligent in hiring Hechavarria. (Doc. #31, pp. 11-13.) In its motion, Lee Memorial raises several arguments as to why it is entitled to summary judgment on this claim. (Doc. #97, pp. 19-31.) However, in her response to the motion, plaintiff withdraws the claim. (Doc. #119, p. 40.) Therefore, Lee Memorial's arguments have been rendered moot.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. #97) is **DENIED**.

2. Count Five of the Amended Complaint is **dismissed with prejudice.**


**DONE AND ORDERED** at Fort Myers, Florida, this ___8th___ day of February, 2019.


JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record