UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONIA GOINES,

    Plaintiff,

v.                        Case No: 2:17-cv-656-FtM-29UAM

LEE MEMORIAL HEALTH SYSTEM,
d.b.a. Cape Coral Hospital
and JEOVANNI HECHAVARRIA,

    Defendants.

**OPINION AND ORDER**

This matter comes before the Court on defendant Lee Memorial's Motion to Exclude Expert Testimony (Doc. #99) filed on November 5, 2018. Plaintiff Donia Goines filed a Response in Opposition (Doc. #129) on December 20, 2018, to which Lee Memorial filed a Reply (Doc. #137) on January 10, 2019. Also before the Court is plaintiff's Motion for Leave of Court for the Disclosure of Supplemental Expert Opinions and/or to Reopen Discovery (Doc. #115) filed on December 5, 2018, as well as Lee Memorial's Response in Opposition (Doc. #128) filed on December 19, 2018.

**I.**

Lee Memorial, a public health care system codified under Florida law, hired defendant Jeovanni Hechavarria as a night nurse for the Cape Coral Hospital in the fall of 2014. (Doc. #31, p. 2; Doc. #120-22, pp. 761-62.) In March of 2015, non-party Brianna

Hammer, a patient at the hospital, accused Hechavarria of sexual assault. (Doc. #122-1, pp. 3-5.) Lee Memorial investigated Hammer's allegation and determined it was unsubstantiated. (Doc. #120-29, p. 1889.) In July of 2016, Hechavarria was arrested by the Charlotte County Sheriff's Office for an unrelated battery. (Doc. #120-46, pp. 2849-50.) Seven days after the arrest, plaintiff was admitted to the Cape Coral Hospital and Hechavarria was assigned as her night nurse. (Doc. #120-49, pp. 3011, 3019-20.) Plaintiff alleges she was sexually assaulted by Hechavarria during the evening. (Id. pp. 3024-36.)

In April 2018, plaintiff filed an Amended Complaint asserting a section 1983 claim and several common law negligence claims against Lee Memorial, as well as a common law assault and battery claim against Hechavarria. (Doc. #31.) In support of these claims, plaintiff has retained Dr. Fred Hyde to provide opinions regarding "hospital standards of care, patient safety, hospital management, hospital policies and procedures, hospital employee oversight, and adherence to hospital standards and norms." (Doc. #129, p. 1.) Dr. Hyde has opined that Lee Memorial fell below industry standards in its failure to provide a safe environment of patient care, its negligence in hiring and supervising employees, and its inadequate response to allegations of sexual assault. (Doc. #99-1, p. 32.) Lee Memorial now seeks to exclude Dr. Hyde's testimony. (Doc. #99.) In addition to opposing the exclusion of

Dr. Hyde's testimony, (Doc. #129), plaintiff also seeks to supplement Dr. Hyde's opinion and reopen limited discovery, (Doc. #115). The Court will address each of these motions in turn.

## II. Motion to Exclude Dr. Hyde's Testimony

### A. General Legal Principles

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 contemplates that the district court will serve as gatekeeper to the admission of scientific and other expert testimony to ensure that any and all expert testimony is both relevant and reliable. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993); Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1183 (11th Cir. 2013). "The Supreme Court did not intend, however, that the gatekeeper role supplant the adversary

system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004) (marks and citations omitted).

In determining the admissibility of expert testimony under Rule 702, the Court applies a "rigorous" three-part inquiry. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). Expert testimony is admissible if (1) the expert is qualified to testify on the topic at issue, (2) the methodology used by the expert is sufficiently reliable, and (3) the testimony will assist the trier of fact. Arthrex, Inc., v. Parcus Med., LLC, 2014 WL 3747598, *1 (M.D. Fla. July 29, 2014) (citing Tampa Bay Water, 731 F.3d at 1183). The burden of laying the proper foundation for the admission of expert testimony "is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." Kilpatrick v. Breg, Inc., 613 F.3d 1329, 1335 (11th Cir. 2010) (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)). The admission of expert testimony is a matter within the discretion of the district court, which is accorded considerable leeway in making its determination. Frazier, 387 F.3d at 1258.

**B. Basis For Exclusion of Testimony**

Lee Memorial argues Dr. Hyde cannot provide an opinion on the following topics: (1) whether Lee Memorial should have taken some action when Hechavarria was arrested in July of 2016 for the unrelated battery; (2) whether Lee Memorial had sufficient policies regarding the handling of allegations of sexual assault; (3) whether Lee Memorial failed to conduct an adequate investigation into Hammer's sexual assault allegation against Hechavarria; and (4) whether Lee Memorial returned Hechavarria to work without proper supervision after Hammer's sexual assault allegation.[1] (Doc. #99, pp. 7-20.) Lee Memorial argues Dr. Hyde lacks the knowledge, skill, experience, training, or education to offer opinions on these matters, Dr. Hyde's opinions on these topics are unreliable, and Dr. Hyde's opinions would not assist the trier of fact. (Id. pp. 7-20.) Having reviewed Dr. Hyde's expert report and declaration, as well as the transcript of his deposition, the Court disagrees with Lee Memorial's arguments.

---

[1] Lee Memorial also argues Dr. Hyde should not be allowed to provide an opinion regarding whether Lee Memorial should have done a more thorough background screening prior to hiring Hechavarria. (Doc. #99, pp. 8-9.) It is unnecessary for the Court to decide this issue as Dr. Hyde's opinion would be relevant only for plaintiff's negligent hiring claim, which was dismissed with prejudice in a prior order by this Court. (Doc. #150.)

**(1) Qualifications To Render Opinions**

According to his declaration, Dr. Hyde has forty years of experience as a hospital executive, a professor of hospital management, and an independent consultant specializing in hospital and health services. (Doc. #129-3, p. 57.) His hospital management experience includes acting as chief executive of a hospital, a hospital network, a surgery center, multiple physician practices, and a health maintenance organization. (Id. p. 62.) As chief executive, Dr. Hyde has been responsible for the management of five accreditation reviews, as well as licensure reviews and state inspections. (Id.) He has also been a consultant to organizations in their preparation for accreditation reviews. (Id.) According to Dr. Hyde, hospitals seek accreditation from accreditation organizations to demonstrate their compliance with Medicare's Conditions of Participation ("CoP"). (Id. at 58.) The accreditation organizations, such as the DNV and The Joint Commission, certify to the relevant federal agency that the hospital meets the CoP. Id. Dr. Hyde states that he is well versed and has significant experience as an executive and a consultant with the DNV and The Joint Commission. (Id. p. 64.)

According to Dr. Hyde, both the DNV and The Joint Commission standards require hospitals ensure the safety of their patients, and his opinions would relate to whether Lee Memorial's conduct

met those standards. (Id. pp. 64-65.) In his report, Dr. Hyde found Lee Memorial fell below acceptable institutional standards in (1) its failure to provide a safe environment of patient care, (2) its negligence in supervising Hechavarria, and (3) its inadequate response to allegations of sexual assault. (Doc. #99-1, p. 26.) In coming to this conclusion, Dr. Hyde relied on the DNV standards, which is the accrediting organization for the Cape Coral Hospital. (Id. pp. 26-32.)

Lee Memorial disputes that Dr. Hyde has sufficient experience with DNV standards to render an expert opinion about them. (Doc. #99, p. 9.) In his deposition, Dr. Hyde testified that he has not consulted for a hospital accredited by the DNV, has not been hired to assist a hospital in becoming accredited by the DNV, and has not had direct experience applying DNV standards to a specific hospital. (Doc. #129-4, p. 103.) However, "[a]n expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." Furmanite Am., Inc. v. T.D. Williamson, Inc., 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007). Based on his experience with the CoP and The Joint Commission, and his experience in general, the Court finds Dr. Hyde may render an opinion on whether Lee Memorial's actions fell below acceptable institutional standards of care. See StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc., 2015 WL 3824170, *4 (M.D. Fla. June 19, 2015) (noting that there is a "relatively low threshold for

qualification" of expert testimony).[2]  The facts identified by Lee Memorial go to the weight to be accorded the testimony, not its admissibility.

**(2) Reliability of Testimony**

Turning to the second requirement for expert testimony, Lee Memorial argues Dr. Hyde's methodology is unreliable. (Doc. #99, pp. 12-17.) The reliability prong is distinct from an expert's qualifications; thus, an expert can be qualified but his opinions unreliable. See Frazier, 387 F.3d at 1261. The Supreme Court has provided a non-exhaustive list of factors to guide courts in assessing the reliability of expert opinions: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." Kilpatrick, 613 F.3d at 1335 (citing Daubert, 509 U.S. at 593-94). Although these criteria are

---

[2] Lee Memorial also argues Dr. Hyde is unqualified to give several of his opinions because he is not an expert in risk management, human resources, or employee relations. (Doc. #99, pp. 9-12.) These arguments miss the mark. Dr. Hyde's opinion regarding Lee Memorial's response to the allegations of sexual assault, its failure to investigate Hechavarria's battery arrest, and its alleged failure to supervise Hechavarria when he returned to work all relate to whether Lee Memorial fell below the appropriate standard of care. (Doc. #99-1, pp. 26, 28, 30-32.) Accordingly, the opinions fall within the scope of Dr. Hyde's expertise on acceptable institutional standards of care for hospitals and he is qualified to give them.

more applicable to assessing the reliability of a scientific expert's opinions, they also "may be used to evaluate the reliability of non-scientific, experience-based testimony." Frazier, 387 F.3d at 1262 (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999)). "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." Id.

In coming to his opinions regarding Lee Memorial's actions, Dr. Hyde relies upon his education, training, and work experience. (Doc. #99-1, pp. 22-32.) Lee Memorial argues Dr. Hyde's opinions are unreliable because plaintiff "has failed to identify how Hyde's experience as a hospital administrator supported or assisted in formulating his opinions as to whether [Lee Memorial]'s actions were in compliance with the DNV standards." (Doc. #137, p. 5.) The Court disagrees.

Dr. Hyde's experience and education have made him familiar with the applicable standards of care for hospitals. The expert report concludes Lee Memorial fell below acceptable standards of care and cites to various examples to illustrate that opinion. (Doc. #99-1, pp. 26-32.) To show how those examples demonstrate Lee Memorial's failure to meet the standard of care, Dr. Hyde relies upon DNV standards and/or Lee Memorial policies. (Id.) The Court finds this sufficient to demonstrate how Dr. Hyde's

experience supports his opinions. See Silcox v. Hunter, 2018 WL 3633251, *11 (Fla. M.D. July 31, 2018) ("Eisner explains that his experience and education have made him familiar with several publications concerning jail standards and practices, and that he analyzed the facts of the case in accordance with those standards and what he knowns from his education and substantial experience in formulating his opinions." (citations omitted)).[3]

**(3) Assistance To Jury**

Finally, Lee Memorial suggests Dr. Hyde's opinions are not helpful to the trier of fact, as required for the admission of expert opinions. (Doc. #99, pp. 17-20.) "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person . . . Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing

---

[3] Lee Memorial raises additional arguments regarding why Dr. Hyde's opinion is unreliable. For example, Lee Memorial suggests Dr. Hyde does not have a complete factual knowledge about Hechavarria's battery arrest or Lee Memorial's sexual assault investigation, and therefore cannot opine that these events demonstrate a failure to meet the standard of care. (Doc. #99, pp. 14-17.) Having reviewed Dr. Hyde's report, declaration, and deposition testimony, the Court finds he has a sufficient factual knowledge for his opinions. See Grawbadger v. Emanoilidis, 2012 WL 3627054, *3 (M.D. Fla. Aug. 21, 2012) ("Issues arising from Mr. Berg's knowledge about civil commitment centers, knowledge about current industry standards for civil commitment centers, specific knowledge about the FCCC's core mission, floor plan, housing options, and capabilities of the housing computer program, may be subject to impeachment if Mr. Berg testifies.").

arguments." Frazier, 387 F.3d at 1262-63. Lee Memorial argues that because a jury is capable of deciding whether Lee Memorial responded sufficiently or had appropriate policies in place, Dr. Hyde's testimony is unnecessary. (Doc. #99, pp. 18-20.) Once again, the Court disagrees.

Dr. Hyde's opinions regarding specific events, such as Hechavarria's arrest and the investigation into the Hammer allegation, relate to whether Lee Memorial met the applicable standard of care. The Court finds those opinions would assist the jury. For example, while he cannot offer legal conclusions, see Commodores Entm't Corp. v. McClary, 879 F.3d 1114, 1128-29 (11th Cir. 2018), Dr. Hyde's opinions regarding whether Lee Memorial's actions fell below the applicable standard of care is relevant in determining whether Lee Memorial was negligent, see Silcox, 2018 WL 3633251, *12 ("Eiser cannot offer an opinion concluding that Hunter was deliberately indifferent or negligent in handling Silcox; however, he can offer opinions on whether Hunter's policies in the jail complied with common jail standards and practices. Although not conclusive on the matter, whether Hunter complied with industry standards can bear on the standard of care in determining negligence. As the common jail industry standards and practices are unknown to the average jury, Eiser's opinions on those standards and practices may be helpful to the jury in determining whether Hunter was negligent." (citations omitted)).

Accordingly, the Court finds (1) Dr. Hyde is qualified to testify to the opinions at issue, (2) the methodology used by Dr. Hyde is sufficiently reliable, and (3) the testimony will assist the jury in deciding the matter. Therefore, Dr. Hyde's testimony is admissible and Lee Memorial's Motion to Exclude is denied.

**III. Motion to Supplement and/or To Reopen Discovery**

On July 16, 2018, plaintiff served a request for production on Lee Memorial, including requests for records regarding all allegations of sexual assault made against Lee Memorial employees from 2006 to 2016. (Doc. #70-1, pp. 14-15.) Lee Memorial objected to the requests, (Doc. #70-2, pp. 17-20), and plaintiff filed a motion to compel production, (Doc. #70, pp. 1-12.) On September 14, 2018, the Magistrate Judge granted the motion in part, ordering Lee Memorial to produce reports and investigative materials for all allegations of sexual assault by Lee Memorial employees from 2012 to 2016, as well as records relating to any disciplinary action taken against Lee Memorial employees alleged to have committed a sexual assault during the same timeframe. (Doc. #76, p. 18.) Lee Memorial produced more than 2,200 pages of records between September 28th and October 2, 2018. (Doc. #115, p. 2.) Due to the timing of the production, Dr. Hyde had already completed his expert report and been deposed by Lee Memorial. (Id.)

Plaintiff now seeks leave to supplement Dr. Hyde's opinions and reopen discovery on a limited basis so that Lee Memorial can have an opportunity to take an updated deposition of Dr. Hyde prior to trial. (Id. p. 4.) In a declaration submitted to the Court in a separate pleading, Dr. Hyde has essentially provided a supplemental expert opinion regarding the adequacy of Lee Memorial's investigations in response to unrelated sexual assault allegations, as well as opinions on Lee Memorial's failure to comply with internal policies. (Doc. #120-2, pp. 17-38.) Dr. Hyde concludes that Lee Memorial "had a deliberate indifference to the rights and safety of patients with regard to being sexually assaulted by hospital staff." (Id. p. 18.) Plaintiff argues Dr. Hyde was unable to provide these opinions at the time that expert disclosures were submitted and the deposition was conducted, and that the opinions "go directly to the heart" of plaintiff's 42 U.S.C. § 1983 claim. (Doc. #115, p. 4.)

Pursuant to Federal Rule of Civil Procedure 26, a party must disclose to the other parties the identity of any expert witness it may use at trial. Fed. R. Civ. P. 26(a)(2)(A). The expert disclosure must be accompanied by a written report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). Rule 26(e) requires a party to supplement or correct its disclosure

"in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Any additions or changes to an expert's report or to information given during the expert's deposition "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2).

If a party fails to provide information as required by Rule 26(e), the party is not allowed to use that information at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In determining whether the failure to sufficiently disclose an expert witness is substantially justified or harmless, courts are guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. <u>Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC</u>, 845 F. Supp. 2d 1241, 1250-51 (M.D. Fla. 2012) (citation omitted).

Plaintiff argues the supplementing of Dr. Hyde's report is substantially justified due to the timing of Lee Memorial's

production of the sexual assault investigation documents. (Doc. #115, p. 5.) Lee Memorial responds that based on the five factors listed above, plaintiff has not demonstrated her failure to supplement the report was substantially justified. (Doc. #128, pp. 4-15.) The Court will address each factor in turn.

**1. Surprise Created by Evidence to be Offered**

Lee Memorial argues that Dr. Hyde's supplemental report will result in unfair prejudice and surprise because the report contains new opinions not in the previous report and these new opinions "are much more far reaching than his previous opinions." (Id. p. 6.) Plaintiff argues the opinions are not new and were originally expressed in Dr. Hyde's initial report. (Doc. #115, p. 9.) Having reviewed the record, the Court agrees with plaintiff.

In Dr. Hyde's initial expert report, he made the following finding:

> From its negligence in hiring and failure in supervision of employees, to its inadequate response to an allegation of sexual assault, Cape Coral Hospital has demonstrated indifference and carelessness in protecting the safety and well-being of its patients. In so doing, it has fallen short of the accreditation standards of DNV GL Healthcare and of its own policies and procedures.

(Doc. #99-1, p. 28.) The Court finds this opinion substantially similar to the one now offered in Dr. Hyde's declaration:

> Based upon my review, as well as my experience, education, background, and training, LEE MEMORIAL HEALTH SYSTEM failed to protect the safety and well-being of its patients, routinely failed to adhere to its own policies and procedures, and routinely showed a systemic

policy and culture of disbelieving patients when they articulated allegations that a healthcare provider sexual [sic] assaulted them. LEE MEMORIAL HEALTH SYSTEM's deliberate indifference to the rights and safety of its patients allowed for future sexual assaults to occur and created an environment where employees committing acts of sexual assault felt protected from punishment.

(Doc. #120-2, p. 18.) While the latter opinion is based on the recently-produced investigative records, it addresses the same matters and comes to the same conclusion as the initial opinion: Lee Memorial was indifferent and careless to the rights of is patients, particularly with regards to sexual assault allegations. Therefore, the Court finds that Dr. Hyde's opinion is not "new" and Lee Memorial cannot reasonably claim unfair surprise.

## 2. Ability to Cure Surprise

As the Court has determined Dr. Hyde's supplemental opinions are substantially the same as his initial opinions, there is no surprise that need be cured. Further, plaintiff is also seeking to reopen discovery to allow Lee Memorial to re-depose Dr. Hyde on the supplemental opinions, which would cure any surprise that may exist.[4]

---

[4] Lee Memorial argues it has already been prejudiced by plaintiff filing Dr. Hyde's supplemental opinions as an exhibit to her Response in Opposition to Lee Memorial's Motion for Summary Judgment. (Doc. #128, p. 9.) However, the Court denied Lee Memorial's motion without any reference to Dr. Hyde or any of his opinions. (Doc. #150.) Therefore, Lee Memorial was not prejudiced.

### 3. Extent of Disruption of Trial

Lee Memorial next argues that if plaintiff is granted leave to supplement Dr. Hyde's report, "all deadlines in this case will need to be reset, thus causing substantial delay in proceedings and trial." (Doc. #128, p. 10). But since Lee Memorial opposes re-opening discovery for a deposition of Dr. Hyde, there seems to be no anticipated impact on the pretrial deadlines.

### 4. Importance of Evidence

Plaintiff argues the supplemental opinions are necessary because they go "directly to the heart" of plaintiff's 42 U.S.C. § 1983 claim. (Doc. #115, p. 4.) The Court agrees.

Plaintiff's section 1983 claim is based on an allegation that Lee Memorial evidenced "deliberate indifference" to her by its policy of failing to supervise Hechavarria and its policy of failing to make reasonable investigations into complaints of sexual assault committed by Hechavarria. (Doc. #31, p. 5.) Dr. Hyde's supplemental opinion that Lee Memorial demonstrated a deliberate indifference to the rights and safety of its patients goes directly to plaintiff's claim. See Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (noting that a plaintiff can establish a municipal liability section 1983 claim by demonstrating an entity's failure to train or supervise its employees evidenced a "deliberate indifference" to a citizen's constitutional rights).

**5. Explanation of Failure to Disclose Evidence**

Finally, Lee Memorial argues that plaintiff's late supplementation is due to her own failure to conduct timely discovery. (Doc. #128, p. 13.) Lee Memorial notes that plaintiff did not request the investigative records until more than six months after discovery had started and only two weeks before Dr. Hyde's expert report was due. (Id.) Accordingly, Lee Memorial argues that plaintiff's failure to supplement Dr. Hyde's report is due to her own inexcusable delay. (Id. p. 13-14.) The Court disagrees.

While plaintiff requested the records late into the discovery process, Lee Memorial refused to produce even some of these records until compelled to do so by the Magistrate Judge. As this was months after the deadline for expert reports had passed, the Court finds plaintiff's explanation for its failure to timely supplement Dr. Hyde's opinion is reasonable. Cf. K & H Dev. Grp., Inc. v. Howard, 255 F.R.D. 562, 567-68 (N.D. Fla. 2009) (striking expert's supplemental report that was based on information available when the expert prepared his initial report).

Having considered each of the five factors above, the Court finds plaintiff was substantially justified in failing to timely supplement Dr. Hyde's opinions. Accordingly, the Court grants that portion of plaintiff's motion. Since Lee Memorial opposes

re-opening discovery, the second portion of the motion will be denied without prejudice as moot.

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion to Exclude Expert Testimony (Doc. #99) is **DENIED.**

2. Plaintiff's Motion for Leave of Court for the Disclosure of Supplemental Expert Opinions and/or to Reopen Discovery (Doc. #115) is **GRANTED IN PART AND DENIED IN PART** to the extent disclosure of supplemental opinion by the expert is granted and the request to reopen discovery is denied without prejudice as moot.

**DONE and ORDERED** at Fort Myers, Florida, this ___28th___ day of February, 2019.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record