UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONIA GOINES,

        Plaintiff,

v.                    Case No: 2:17-cv-656-FtM-29UAM

LEE MEMORIAL HEALTH SYSTEM,
d.b.a. Cape Coral Hospital
and JEOVANNI HECHAVARRIA,

        Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on defendant Lee Memorial's Motions to Exclude Expert Testimony (Doc. #95; Doc. #96) filed on November 5, 2018. Plaintiff Donia Goines filed Responses in Opposition (Doc. #130; Doc. #131) on December 21, 2018, to which Lee Memorial filed Replies (Doc. #135; Doc. #136) on January 10, 2019.

## I.

Lee Memorial, a public health care system codified under Florida law, hired defendant Jeovanni Hechavarria as a night nurse for the Cape Coral Hospital in the fall of 2014. (Doc. #31, p. 2; Doc. #120-22, pp. 761-62.) In March of 2015, non-party Brianna Hammer, a patient at the hospital, accused Hechavarria of sexual assault. (Doc. #122-1, pp. 3-5.) Lee Memorial investigated Hammer's allegation and determined it was unsubstantiated. (Doc.

#120-29, p. 1889.)  In July of 2016, Hechavarria was arrested by the Charlotte County Sheriff's Office for an unrelated battery. (Doc. #120-46, pp. 2849-50.)  Seven days after the arrest, plaintiff was admitted to the Cape Coral Hospital and Hechavarria was assigned as her night nurse.  (Doc. #120-49, pp. 3011, 3019-20.)  Plaintiff alleges she was sexually assaulted by Hechavarria during the evening.  (Id. pp. 3024-36.)

In April of 2018, plaintiff filed an Amended Complaint asserting a section 1983 claim and several common law negligence claims against Lee Memorial, as well as a common law assault and battery claim against Hechavarria.  (Doc. #31.)  In support of these claims, plaintiff has retained Barbara Cain, RN, and Tracy Decker, RN.  Ms. Cain has been retained to provide opinions regarding hospital risk management standards and investigations, and specifically Lee Memorial's investigations, response, and actions involving Hechavarria's alleged sexual assaults.  (Doc. #130, p. 1.)  Ms. Decker has been retained to provide opinions regarding nurse management and nurse supervisor standards, including "oversight and supervision of nurses, investigation of nursing misconduct, disciplinary action for nursing misconduct and other appropriate responses to nursing misconduct."  (Doc. #131, p. 1.)  Lee Memorial now seeks to exclude both Ms. Cain's and Ms. Decker's testimony.  (Doc. #95; Doc. #36.)

## II.

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 contemplates that the district court will serve as gatekeeper to the admission of scientific testimony to ensure that any and all expert testimony is both relevant and reliable. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993); Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1183 (11th Cir. 2013). "The Supreme Court did not intend, however, that the gatekeeper role supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but

admissible evidence." McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004) (marks and citations omitted).

In determining the admissibility of expert testimony under Rule 702, the Court applies a "rigorous" three-part inquiry. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). Expert testimony is admissible if (1) the expert is qualified to testify on the topic at issue, (2) the methodology used by the expert is sufficiently reliable, and (3) the testimony will assist the trier of fact. Arthrex, Inc., v. Parcus Med., LLC, 2014 WL 3747598, *1 (M.D. Fla. July 29, 2014) (citing Tampa Bay Water, 731 F.3d at 1183). The burden of laying the proper foundation for the admission of expert testimony "is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." Kilpatrick v. Breg, Inc., 613 F.3d 1329, 1335 (11th Cir. 2010) (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)). The admission of expert testimony is a matter within the discretion of the district court, which is accorded considerable leeway in making its determination. Frazier, 387 F.3d at 1258.

### III.

Ms. Cain has a master's degree in health services administration and a bachelor of science degree in nursing. (Doc. #95-1, p. 21.) She was also a certified healthcare risk manager from 2002 until 2017. (Id.) Ms. Cain has over thirty years of

experience in the health care industry as both a nurse and a risk manager. (Doc. #130-2, p. 16.) From 2009 until 2015, Ms. Cain was a clinical risk manager for a health care system in Florida. (Doc. #95-1, p. 21.) While a practicing hospital risk manager, Ms. Cain investigated allegations of sexual misconduct by employees, educated hospital staff regarding risk management policies and procedures, developed measures to minimize the risk of adverse incidents, recommended and implemented safety measures and policies to ensure patient protection, and reported incidents and findings to the Agency of Health Care Administration and the Florida Department of Health. (Doc. #130-2, pp. 16-18.)

Ms. Decker has a doctorate in nursing practice in executive leadership, a master's degree in health sciences, a bachelor of science degree in nursing, and a bachelor of arts degree in psychology. (Doc. #96-1, p. 21.) She also holds a certificate in health care risk management. (Id.) Ms. Decker has been practicing continuously since receiving her Florida nursing license in 1984 and is now a board-certified nurse executive. (Id.) In her thirty-five years in nursing, Ms. Decker has been employed as a nurse administrative supervisor of a night shift, a nursing operations manager, and a patient care administrator. (Id.) In these roles, Ms. Decker has been responsible for coordinating patient and nursing staff placement, responding to hospital emergencies, acting as a resource person for interpreting

hospital polices, acting as a liaison to hospital administration, responding to patient and employee complaints, coordinating work schedules for employees, and hiring, supervising, and disciplining nurses. (Id.)

Lee Memorial seeks to exclude Ms. Cain from providing the following opinions: (1) Lee Memorial failed to "take seriously" Hammer's sexual assault allegation against Hechavarria; (2) Lee Memorial's legal services department did not immediately refer Hammer's accusation to the risk manager; (3) Lee Memorial failed to secure evidence in connection with Hammer's accusation; (4) Lee Memorial's risk manager failed to "appropriately assess statements" of Hammer in connection with the investigation, and failed to "include a qualified professional" in the investigative process; (5) Lee Memorial failed to provide an adequate investigation, including a "neutral environment" for the interview of Hammer; (6) Lee Memorial failed to consult with employee relations for guidance regarding Hechavarria's unrelated battery arrest and failed to implement a corrective action plan; and (7) Lee Memorial failed to "adequately educate hospital staff" on risk management policies. (Doc. #95, pp. 4-5.)

Additionally, Lee Memorial seeks to exclude Ms. Decker from providing the following opinions: (1) Lee Memorial failed to conduct a "thorough" or "proper" investigation into Hammer's allegation against Hechavarria; (2) Lee Memorial did not properly

handle Hechavarria's return to work after Hammer's allegation; (3) Lee Memorial failed to investigate Hechavarria's unrelated battery arrest; (4) Lee Memorial did not have "adequate policies and procedures" regarding prevention of sexual abuse; and (5) Lee Memorial showed "indifference to the rights and safety of future patients" which resulted in the assault of plaintiff by Hechavarria. (Doc. #96, pp. 4-5.) Lee Memorial argues both Ms. Cain and Ms. Ms. Decker lack the knowledge, skill, experience, training, or education to offer opinions on these matters, their opinions on these topics are unreliable, and their opinions would not assist the trier of fact. (Doc. #95, pp. 7-19; Doc. #96, pp. 6-19.) The Court will address these arguments in turn.

**1. Qualifications To Render Opinions**

As noted, the first inquiry in determining whether an expert's testimony is admissible is determining whether the expert is qualified to testify on the topic at issue. Arthrex, 2014 WL 3747598, *1 (citing Tampa Bay Water, 731 F.3d at 1183). Lee Memorial argues Ms. Cain and Ms. Decker are not qualified to offer any of the opinions listed above. The Court will address this argument as it relates to each of the opinions rendered by Ms. Cain and Ms. Decker.

**Ms. Cain**

    **a) Opinions One through Five**

Lee Memorial offers the same argument regarding the first five of Ms. Cain's opinions. Specifically, Lee Memorial asserts that Ms. Cain is not qualified to offer these opinions because "these are opinions that require the expertise of someone qualified in the area of investigating patient sexual abuse allegations against a nurse or other employee." (Doc. #95, p. 8.) Lee Memorial argues that because Ms. Cain has only participated in two investigations in which a patient made allegations of sexual misconduct, she does not have the requisite experience to be qualified as an expert for purposes of the above opinions. (Id.) The Court disagrees with Lee Memorial's argument.

Ms. Cain possesses fourteen years of experience in the oversight of risk management and direct clinical risk management. (Doc. #130-2, p. 16.) Ms. Cain was a certified healthcare risk manager and has investigated allegations of inappropriate conduct and/or practices of hospital employees. (Id. pp. 16-17.) As part of this role, Ms. Cain investigated allegations of sexual misconduct by employees. (Id. p. 16.) The Court finds this experience sufficient to meet the "relatively low threshold for qualification" of expert testimony. StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc., 2015 WL 3824170, *4 (M.D. Fla. June 19, 2015). To the extent Lee Memorial argues Ms. Cain is not qualified

to offer opinions because she does not have enough experience with investigations of sexual assault complaints, (Doc. #95, p. 8), "[a]n expert is not necessarily unqualified simply because her experience does not precisely match the matter at hand." Furmanite Am., Inc. v. T.D. Williamson, Inc., 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007)). Lee Memorial's argument regarding Ms. Cain's experience investigating sexual assault allegations goes to the weight of Ms. Cain's opinions rather than their admissibility. Anderson v. Techtronic Indus. N. Am., Inc., 2015 WL 12843836, *2 (M.D. Fla. Apr. 14, 2015) ("The qualification standard for expert testimony is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not to admissibility." (citation omitted)).

**b) Opinion Six**

Ms. Cain opines that Lee Memorial's risk manager should have consulted with Lee Memorial's employee relations department after Hechavarria was arrested for an unrelated battery approximately a week before plaintiff was admitted to the Cape Coral Hospital.[1] (Doc. #95-1, p. 23.) Ms. Cain also asserts that a corrective action plan should have been implemented for Hechavarria after

---

[1] Hechavarria testified at a deposition that he informed his direct supervisor of the arrest the next day he went to work. (Doc. #120-18, pp. 617-18.)

this event. (Id.) Ms. Cain asserts that such an event was "a red-flag" that "should have prompted intervention from risk management for the protection of patients." (Doc. #130-2, p. 25.) Additionally, Ms. Cain testified at a deposition that a corrective action plan is not necessarily about imposing discipline, but rather about "getting help for the employee if they have a problem that might impact patient safety." (Doc. #130-4, p. 99.)

Lee Memorial argues that Ms. Cain is not qualified to offer these opinions because they address matters "typically handled by a human resources department," and Ms. Cain does not have human resources experience, education, or training. (Doc. #95, p. 9.) The Court disagrees with this argument. Ms. Cain has stated that "[p]art of a risk manager's job function is to recommend the removal of dangerous employees and/or negligent employees from the workforce prior to a patient injury." (Doc. #130-2, p. 25.) As part of this prevention process, risk management identifies employees and coordinates with hospital management regarding their removal. (Id.) Accordingly, Ms. Cain's opinions on this topic stem from her experience as a risk manager, and therefore her lack of human resources experience does not render her unqualified.

### c) Opinion Seven

Ms. Cain has opined that Lee Memorial failed to provide adequate education to its non-physician employees, specifically regarding sexual assault prevention. (Doc. #95-1, p. 23; Doc.

#130-2, p. 25.) Lee Memorial argues that Ms. Cain is not qualified to offer this opinion because she does not have sufficient experience, education, or training on what constitutes "adequate" education of risk management policies. (Doc. #95, p. 9.) Lee Memorial also argues "[t]he mere fact that Cain has worked as a risk manager herself does not make her an expert in education regarding policies." (Id.) These arguments are without merit. Florida law requires licensed healthcare facilities to establish an internal risk management program that includes, among other things, "[r]isk management and risk prevention education and training of all nonphysician personnel." § 395.0197(1)(b)1., Fla. Stat. The Court finds Ms. Cain's experience as a State of Florida certified risk manager and knowledge of hospital risk management standards renders her sufficiently qualified to offer an opinion on this topic.

**Ms. Decker**

As noted previously, Lee Memorial is seeking to prevent Ms. Decker from testifying to the following opinions: (1) Lee Memorial failed to conduct a "thorough" or "proper" investigation into Hammer's allegation against Hechavarria; (2) Lee Memorial did not properly handle Hechavarria's return to work after Hammer's allegation; (3) Lee Memorial failed to investigate Hechavarria's unrelated battery arrest; (4) Lee Memorial did not have "adequate policies and procedures" regarding prevention of sexual abuse; and

(5) Lee Memorial showed "indifference to the rights and safety of future patients" which resulted in the assault of plaintiff by Hechavarria. (Doc. #96, pp. 4-5.)

### a) Opinion One

In her report, Ms. Decker opined that Lee Memorial "failed to conduct a thorough investigation" and "failed to properly investigate" Hammer's complaints of sexual assault. (Doc. #96-1, pp. 22-23.) At a deposition, Ms. Decker testified that Lee Memorial should have sequestered potential physical evidence and waited until the Cape Coral Police Department concluded their investigation.[2] (Doc. #131-3, p. 76.) Ms. Decker also stated in a subsequent declaration that her opinion regarding this topic is that after Hammer's allegation, Lee Memorial should have investigated Hechavarria's background. (Doc. #131-2, p. 21.) Ms. Decker suggests that such an investigation would have revealed information prompting either additional supervision or termination of Hechavarria.[3] (Id.)

---

[2] There's evidence in the record that Hammer informed hospital personnel that the gloves and gown Hechavarria wore during the alleged sexual assault were in the hospital room's trash can. (Doc. #122-1, p. 4-5.) However, the gloves and gown were not collected. (Id.) Further, Lee Memorial's risk manager investigated Hammer's accusation and notified the Florida Department of Health the following day that the allegation could not be validated. (Doc. #120-29, p. 1889.)

[3] Plaintiff has produced evidence that prior to being hired by Lee Memorial, Hechavarria had been subject to multiple temporary restraining orders due to allegations of domestic violence made by Hechavarria's former wife. (Doc. #120-14, p. 538; Doc. #120-15,

Lee Memorial first argues that Ms. Decker has insufficient education, training, and experience to offer the above opinions. (Doc. #96, pp. 7-8.)   The Court disagrees.   Ms. Decker has a certificate in in health care risk management and, as part of her work experience, has held positions requiring her to investigate patient complaints regarding acts of misconduct by nursing staff. (Doc. #96-1, p. 21; Doc. #131-2, p. 20.)  As a nursing supervisor, she participated in an investigation of a patient's allegations of sexual misconduct made against a nurse.   (Doc. #131-3, p. 123.) As with Ms. Cain, the Court finds this knowledge and experience sufficient to meet the "relatively low threshold for qualification" of expert testimony.  StoneEagle Servs., Inc., 2015 WL 3824170, *4.  To the extent Lee Memorial argues Ms. Decker is not qualified to offer opinions on the sufficiency of this investigation because she does not have enough experience with investigations of sexual assault complaints, (Doc. #96, pp. 7-8), the Court rejects this argument for the same reasons articulated regarding Ms. Cain.  See Anderson, 2015 WL 12843836, *2 ("The qualification standard for expert testimony is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not to admissibility." (citation omitted)); Furmanite Am., Inc., 506

p. 545; Doc. #120-16, p. 551; Doc. #120-17, p. 561.)

F. Supp. 2d at 1129 ("An expert is not necessarily unqualified simply because her experience does not precisely match the matter at hand.").

### b) Opinion Two

In her report, Ms. Decker opines that "[t]here was an opportunity to more closely observe and supervise Jeovanni Hechavarria's conduct and behavior by changing the shift he worked."[4]  (Doc. #96-1, p. 23.)  Lee Memorial argues that Ms. Decker is unqualified to offer an opinion on this topic because she does not have risk management or human resources experience. (Doc. #96, p. 9.)  The Court disagrees.

Ms. Decker notes in her declaration that her opinion that Lee Memorial did not properly handle Hechavarria's return to work is based on her "years of training and work experience pertaining to nurse discipline, including additional supervision and termination, nurse management, and appropriate conditions on a nurse's return to the workforce following disciplinary action." (Doc. #131-2, pp. 21-22.)  She also testified at her deposition that she has spent the majority of her career working on the night shift, but has worked on the day shift for the last thirteen years.

---

[4] Hechavarria was placed on leave following Hammer's allegation but allowed to return to work after Lee Memorial determined Hammer's allegations could not be validated.  Per Hechavarria, no changes were made to his shift or his access to female patients, and he was not required to undergo any additional supervision or training.  (Doc. #120-37, p. 2373.)

(Doc. #131-3, p. 42.)  The Court finds Ms. Decker has sufficient experience and knowledge to offer an opinion regarding whether Hechavarria should have been switched to the day shift in order to be more closely supervised after Hammer's allegation.

### c) Opinion Three

In her report, Ms. Decker notes that there is no documentation that Lee Memorial investigated Hechavarria after he was arrested for the unrelated battery.  (Doc. #96-1, p. 23.)  Ms. Decker states that Hechavarria should have been investigated and, considering his "troubled history," the arrest should have resulted in disciplinary action.  (Doc. #131-2, p. 22.)  Lee Memorial argues Ms. Decker cannot offer this opinion because she does not have experience in conducting or reviewing background investigations, nor does she know what kind of events would disqualify a person from employment as a nurse.  (Doc. #96, pp. 9-10.)  Once again, this argument misses the mark.

Ms. Decker is not offering an opinion that a specific type of investigation should have been conducted.  Rather, Ms. Decker's opinion relates to whether Lee Memorial should have done some type of investigation in response to Hechavarria's arrest, which is based on her experience as a nurse manager and administrative supervisor.  In these roles, Ms. Decker was responsible for implementing "appropriate corrective actions" following "non-employment conduct that could be detrimental to the image of the

hospital system – such conduct could range from DUI arrests to domestic battery." (Doc. #131-2, p. 22.) The Court finds this experience sufficient to offer the opinion at issue.

### d) Opinion Four

In her report, Ms. Decker opines that Lee Memorial "failed to have adequate policies and procedures that speak to preventing sexual abuse." (Doc. #96-1, p. 23.) Ms. Decker notes that one of Lee Memorial's policies, titled Sexual Abuse and Prevention, fails to include information on how to protect patients. (Id.) Lee Memorial argues that an opinion on the sufficiency of Lee Memorial's policies requires education, training, or experience in the development of such policies, which Ms. Decker lacks. (Doc. #96, p. 10.) The Court disagrees. As an administrative supervisor, Ms. Decker has experience interpreting hospital policies. (Doc. #96-1, p. 21); see also Silcox v. Hunter, 2018 WL 3633251, * 10 (Fla. M.D. July 31, 2018) (finding expert was qualified to offer opinion on policies and procedures based on, inter alia, administrative experience). Lee Memorial's argument that Ms. Decker never developed policies goes to the weight of her opinions and not their admissibility.

### e) Opinion Five

Ms. Decker's final opinion in her report is that Lee Memorial's "indifference to the rights and safety of future patients" resulted in the sexual assaults committed by

Hechavarria. (Doc. #96-1, p. 23.) Lee Memorial argues this is a generalized restatement of the opinions already set forth above and Ms. Decker lacks the experience, education or training to render it. (Doc. #96, p. 10.) However, even if the Court accepted Lee Memorial's argument that this is a restatement of Ms. Decker's prior opinions, the Court has determined she is qualified to offer those opinions. Therefore, Lee Memorial's argument regarding Ms. Decker's qualifications for this opinion have been rendered moot.

### 2. Reliability of Testimony

The second inquiry for determining the admissibility of expert testimony is whether the methodology used by the expert is sufficiently reliable. Arthrex, 2014 WL 3747598, *1 (citing Tampa Bay Water, 731 F.3d at 1183). The reliability prong is distinct from an expert's qualifications; thus, an expert can be qualified but his opinions unreliable. See Frazier, 387 F.3d at 1261. The Supreme Court has provided a non-exhaustive list of factors to guide courts in assessing the reliability of expert opinions: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." Kilpatrick, 613 F.3d at 1335 (citing Daubert, 509 U.S. at 593-94). Although these criteria are more applicable to assessing the reliability of a scientific

expert's opinions, they "may be used to evaluate the reliability of non-scientific, experience-based testimony." Frazier, 387 F.3d at 1262 (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999)). "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." Id.

Lee Memorial argues that even if Ms. Cain and Ms. Decker are qualified to offer opinions on the topics at issue, such opinions are inadmissible because they are unreliable. (Doc. #95, pp. 10-15; Doc. #96, pp. 10-16.) The Court will address these arguments in turn.

**Ms. Cain**

Ms. Cain's methodology used to reach her opinions is described in her report and her declaration. Ms. Cain states that she analyzed the documents and depositions from this case based on her years of experience as a certified hospital risk manager and the standards that are accepted amongst hospital accreditation agencies and similar hospital systems. (Doc. #130-2, p. 19.) Her expert report also makes references to the Joint Commission Sentinel Event publication, as well as Florida's risk management statute and various other authoritative texts and publications regarding investigation and analysis. (Doc. #95-1, p. 23.) Ms. Cain states she utilized these sources as part of her methodology

for finalizing her opinions. (Doc. #130-2, pp. 19-20). Having reviewed the expert reports, declarations, and deposition testimony, the Court finds the majority of Ms. Cain's opinions are sufficiently reliable to be admissible. See Silcox, 2018 WL 3633251, *11 ("Eisner explains that his experience and education have made him familiar with several publications concerning jail standards and practices, and that he analyzed the facts of the case in accordance with those standards and what he knowns from his education and substantial experience in formulating his opinions." (citations omitted)). However, the Court finds plaintiff has not sufficiently demonstrated the reliability of Ms. Cain's second opinion or a portion of her fifth opinion.

Regarding the second opinion, Ms. Cain believes Lee Memorial should have immediately contacted its risk manager when Hammer's allegation came to light. (Doc. #130-4, pp. 77-78.) However, when asked if it was an industry standard for a risk manager to immediately report to the scene, Ms. Cain responded, "I think it depends on the hospital," and stated she could not answer what Lee Memorial's practice was. (Id. at 79.) In her fifth opinion that Lee Memorial did not provide an adequate investigation, Ms. Cain stated Lee Memorial should have provided a "neutral environment" for Hammer during the interview. By this, Lee Memorial "should have moved the patient to a comfortable room." (Doc. #130-4, p. 95.) When asked if this was an industry standard, Ms. Cain said

it was recommended in an article she could not remember the name of. (Id. p. 96.) She also suggested it was common sense. (Id.) The Court finds Ms. Cain's opinions on these topics do not meet the reliability requirement for admission. See Daubert, 509 U.S. at 590 (noting that expert testimony must be "more than subjective belief or unsupported speculation"); Rosenfeld v. Oceania Cruises, Inc., 682 F.3d 1320, 1331 (11th Cir. 2012) ("[M]atters of common sense typically do not require or allow for expert testimony."); Gardner v. Ford Motor Co., 2015 WL 12841011, *4 (M.D. Fla. June 3, 2015) ("Opinions that are formulated in accordance with an unknown methodology cannot be tested or evaluated and cannot be deemed reliable."). Accordingly, these opinions will not be admissible at trial.

Turning to Ms. Decker, she states in her declaration that her opinions were formulated by reviewing the relevant facts from the depositions, documents and exhibits, and then applying those facts to the standards of care known to her through her education, training and experience. (Doc. #131-2, p. 20.) Ms. Decker also developed her opinions by comparing Lee Memorial's policies and procedures at the time of the alleged assaults with the manner in which Lee Memorial employees responded. (Id.) Finally, Ms. Decker notes that she reviewed and utilized her knowledge of the Florida Nurse Practice Act, which contains some of the standards of practice and behavior requirements for nurses. (Id.) The

Court finds Ms. Decker has sufficiently demonstrated the reliability of her opinions.[5]  See Silcox, 2018 WL 3633251, *11.

### 3. Assistance To Jury

The final criteria for the admission of expert testimony is the requirement that the testimony assist the jury.  Arthrex, 2014 WL 3747598, *1 (citing Tampa Bay Water, 731 F.3d at 1183). "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person . . . Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."  Frazier, 387 F.3d at 1262-63.  Lee Memorial argues that none of Ms. Cain's and Ms. Decker's opinions will assist the jury and, therefore, none are admissible.  (Doc. #95, pp. 15-19; Doc. #96, pp. 16-19.)  The Court disagrees.

Ms. Cain's and Ms. Decker's opinions address standard practices for a hospital risk manager and hospital nurse supervisor, respectively, with respect to patient safety.  Such

---

[5] To the extent Lee Memorial also challenges Ms. Cain and Ms. Decker's factual support for their opinions, (Doc. #95, p. 11; Doc. #96, pp. 13-15), the Court finds both have sufficient factual knowledge.  However, Lee Memorial is free to address this issue during cross-examination should Ms. Cain or Ms. Decker testify. See Grawbadger v. Emanoilidis, 2012 WL 3627054, *3 (M.D. Fla. Aug. 21, 2012) ("Issues arising from Mr. Berg's knowledge about civil commitment centers, knowledge about current industry standards for civil commitment centers, specific knowledge about the FCCC's core mission, floor plan, housing options, and capabilities of the housing computer program, may be subject to impeachment if Mr. Berg testifies.").

opinions go directly to the negligence claims raised by plaintiff and are based on knowledge and experience unlikely to be held by the average citizen. Therefore, the Court concludes plaintiff has satisfied the third criteria for admissibility.

In conclusion, the Court finds both witnesses may offer the opinions at issue, subject to the Court's ruling regarding Ms. Cain's second and fifth opinions.

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion to Exclude Expert Testimony (Doc. #95) is **GRANTED IN PART AND DENIED IN PART** to the extent Ms. Cain's second opinion and the portion of her fifth opinion addressing a "neutral environment" are excluded.

2. Defendant's Motion to Exclude Expert Testimony (Doc. #96) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this ___28th___ day of February, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record