UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONIA GOINES,

        Plaintiff,

v.                            Case No: 2:17-cv-656-FtM-29NPM

LEE MEMORIAL HEALTH SYSTEM
and JEOVANNI HECHAVARRIA,

        Defendants.

_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on review of defendant Lee Memorial Health System's Second Amended Motion for Spoliation Sanctions (Doc. #193) filed on June 21, 2019. Both Plaintiff and non-party Halberg & Fogg, PLLC filed Responses in Opposition (Doc. #195; Doc. #197) on July 5, 2019. For the reasons that follow, the motion is denied.

**I.**

Plaintiff Donia Goines has filed an Amended Complaint alleging she was sexually assaulted by defendant Jeovanni Hechavarria while a patient at a Lee Memorial hospital. (Doc. #31.) The issue currently before the Court involves plaintiff's responses to discovery requests and her deletion of her Facebook account, and whether such actions warrant sanctions.

**A. Factual Background**

According to the Amended Complaint, plaintiff was admitted to the Cape Coral Hospital on the evening of July 15, 2016 and stayed through July 17th. (Id. p. 2.) Hechavarria was plaintiff's night nurse and was in plaintiff's hospital room multiple times between 10 p.m. July 16th and 7 a.m. July 17th. (Id. p. 3.) Plaintiff alleges that Hechavarria sexually assaulted her during the early morning hours of July 17th. (Doc. #120-49, pp. 3033, 3036-37.) She has also testified Hechavarria threatened her if she told anyone, telling plaintiff he had written down her address and "would come get" her. (Id. p. 3036.) Plaintiff testified that since the alleged assault, she has experienced depression, paranoia, and isolation. (Id. p. 3074.)

In August 2016, Lee Memorial received a demand letter from plaintiff's then-attorneys. (Doc. #193, p. 4; Doc. #193-4, pp. 67-68.) Per Lee Memorial, upon receipt of the letter its attorneys ran a Facebook search for plaintiff. (Doc. #193, p. 4.) Plaintiff's profile was located and fourteen pages of screenshots were saved, although several of the pages were duplicates of each other. (Id.) The screenshots indicate plaintiff was active on Facebook during the early morning hours of July 17th, making various posts and comments. (Doc. #193-2, pp. 54-57.) One such post, purportedly made at 1:16 a.m., stated plaintiff was "Getting

well" and utilized Facebook's location feature to indicate plaintiff was at the Cape Coral Hospital.[1] (Id. p. 56.)

Plaintiff filed her initial Complaint in November 2017 (Doc. #2), and Lee Memorial submitted to plaintiff interrogatories and requests for production in February 2018 (Doc. #193-5; Doc. #193-6.) In the interrogatories, Lee Memorial requested, *inter alia*, the following:

> Identify (as defined above) social media accounts owned by you or used by you between July 1, 2016 through the present for which your posts, comments or discussions reference Defendant Lee Health, your hospitalization at Defendant Lee Health, any of Defendant Lee Health's past or current employee [sic], any issues relating to your lawsuit, or your mental health or status. For each account, identify (as defined above) the forum and user name. Include accounts for Facebook, Twitter, LinkedIn, Instagram, SnapChat and/or any other social media pages or sites in which you participate.

(Doc. #193-5, pp. 72-73.) Lee Memorial also requested from the same time period "all electronic postings on any social networking website," including Facebook, in which plaintiff "reference either Defendant, your hospitalization with Defendant, Lee Health, Defendant Lee Health's past or current employees, any issues relating to your lawsuit, or your mental or emotional state."

---

[1] The other screenshots are of plaintiff's Facebook page and various posts between July 2016 and February 2017. (Doc. #193-2, pp. 44-53.) Additionally, Lee Memorial has obtained screenshots of a non-party's Facebook posts, which contain several photographs of plaintiff between September and November 2016. (Doc. #193-3, pp. 58-66.) These photographs depict plaintiff with other individuals at various social activities, such as restaurants and the beach. (Id.)

(Doc. #193-6, p. 77.) The request was "not limited to postings on [plaintiff's] own social media sites." (Id.)

Plaintiff responded to the requests on April 23, 2018, stating she "had Facebook until October, 2017" and it had been "deactivated." (Doc. #193-5, p. 73.) Plaintiff also provided her username, but stated the following: "I do not believe that any of my posts mention Lee Health, my hospitalization at Cape Coral Hospital or any of the Defendants [sic] past or current employees." (Id.) Plaintiff also stated she had none of the electronic posts requested and did not maintain an active social media account. (Doc. #193-6, p. 77.)

Being in possession of plaintiff's post in which she referenced her hospitalization at Cape Coral Hospital, Lee Memorial evidently requested plaintiff provide additional information regarding her Facebook account. (Doc. #195, p. 5.) Plaintiff supplemented her responses in May 2018, stating her Facebook account had been deleted and she was unable to retrieve any information, posts, or photographs. (Doc. #193-7, p. 84.) She also stated again that, to the best of her recollection, none of her posts referenced Lee Memorial, its employees, her hospitalization, or "any issues" relating to the lawsuit or plaintiff's mental health."[2] (Id.)

---

[2] Plaintiff's attorney has since testified that he did not learn plaintiff deleted her Facebook account until after Lee

Plaintiff was deposed by Lee Memorial in June 2018, during which she testified that she had not used social media during the night of July 16th or early morning of July 17th. (Doc. #120-49, pp. 3034, 3048, 3050, 3052-53.) When confronted with the screenshots of posts made on July 17th, plaintiff testified she did not recall going on Facebook while at the hospital. (Id. pp. 3100-04.) During the deposition, plaintiff also testified that she briefly reactivated her Facebook account in 2018 but she did not recall when. (Id. p. 3116.) When asked if she could reactivate the account again, plaintiff testified that she did not know because she had not tried. (Id.) When asked if she had tried as part of the discovery in the lawsuit, plaintiff responded, "Why would I? As part of this discovery. What do I need to discover? . . . Why would I want to go check on something." (Id. p. 3117.)

Following the deposition, Lee Memorial sent a letter to plaintiff's attorneys again requesting plaintiff's Facebook posts responsive to the previous requests. (Doc. #193-9, p. 96.) Plaintiff's attorney responded that plaintiff did not have access to the deleted Facebook account, and characterized Lee Memorial's letter as "merely an attempt to artificially create a discovery issue as a litigation tactic."[3] (Doc. #123-11, pp. 125-27.)

---

Memorial challenged the April 23rd responses. (Fogg Depo. pp. 57-58, 61.) Plaintiff testified that she did not inform her attorney prior to deleting the account. (Plaintiff Depo. p. 63.)

[3] The attorney's response was included as an exhibit to Lee

Each party subsequently made attempts to either retrieve the Facebook information or restore access to the account. In August 2018, Lee Memorial subpoenaed Facebook regarding plaintiff's account. (Doc. #193-10, p. 98.) Facebook responded that it could not identify the account and therefore had no information to provide. (Id.) In September 2018, plaintiff unsuccessfully requested Facebook restore access to her account "to satisfy discovery requests related to [her] Facebook account and activity." (Doc. #195-1, p. 22.)

**B. Procedural History**

After failing to obtain information from Facebook, Lee Memorial filed an initial and then an amended motion for spoliation sanctions in December 2018. (Doc. #110; Doc. #123.) The amended motion accused plaintiff of willfully destroying her Facebook account to prevent the defendants from using the contents to defend themselves. (Doc. #123, p. 2.) While the motion was pending, the Court received a letter purportedly written by an individual named "Bonnie Hayes." (Doc. #153.) In the letter, which the Court has filed under seal, Ms. Hayes makes allegations that plaintiff deleted her social media accounts to destroy evidence and did so under the direction of her attorney. (Id.) Lee Memorial evidently received a similar letter and subsequently

---

Memorial's prior motion for sanctions.

filed a motion requesting an evidentiary hearing on the matter. (Doc. #160.) As an alternative to an evidentiary hearing, Lee Memorial requested discovery be reopened and it be allowed to take depositions of various individuals. (Id.) Plaintiff objected to both requests, stating the letters were written by a disgruntled former employee of plaintiff's attorneys and the information therein was "categorically false." (Doc. #174, p. 1.) Over plaintiff's objection, the Court granted Lee Memorial's alternative request to reopen discovery. (Doc. #176.) The Court also permitted the parties to file any motions related to the issue or to supplement the then-pending motion for sanctions. (Id.)

During the reopened discovery period, depositions were taken of plaintiff and plaintiff's attorney, as well as a paralegal and the former employee of plaintiff's attorneys. On June 21, 2019, Lee Memorial filed the Second Amended Motion for Spoliation Sanctions currently before the Court. (Doc. #193.) The motion requests (1) sanctions against plaintiff's attorney pursuant to 28 U.S.C. § 1927, (2) sanctions against plaintiff and her attorney pursuant to the Federal Rules of Civil Procedure, and (3) sanctions against plaintiff pursuant to this Court's inherent authority.[4]

---

[4] The Court notes that Lee Memorial's motion does not rely upon the egregious allegations in the letters for support. When deposed, the former employee plaintiff's attorneys accuse of writing the letters invoked the Fifth Amendment over two hundred times.

(Id. pp. 10-18.)  In relief, Lee Memorial requests to recoup the fees and expenses it has incurred in pursuing the motion and the spoliation issue generally, as well as various jury instructions related to plaintiff's Facebook activity.  (Id. pp. 22-24.)

**II.**

**A. Section 1927**

Lee Memorial first argues plaintiff's attorney is sanctionable under 28 U.S.C. § 1927.  (Id. p. 10.)  Section 1927 provides the following:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  The purpose of section 1927 "is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them." O'Neil v. McDonald's Corp., 2019 WL 2226010, *3 (M.D. Fla. Jan. 23, 2019) (citation omitted).  The Eleventh Circuit has held that an attorney multiplies proceedings "unreasonably and vexatiously" within the meaning of section 1927 "only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1239 (11th Cir. 2007) (citation omitted).  "[N]egligent conduct, standing alone, will not support a finding of bad faith under § 1927—that

is, an attorney's conduct will not warrant sanctions if it simply fails to meet the standard of conduct expected from a reasonable attorney." Id. at 1241-42; see also Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003) ("A determination of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims.").

Lee Memorial argues plaintiff's attorney engaged in reckless conduct with respect to the Facebook account in several ways. (Doc. #193, p. 12.) First, Lee Memorial states plaintiff's counsel "failed to prevent the spoliation issue from arising by inadequately educating [plaintiff] with respect to her obligations to preserve evidence." (Id.) The Court disagrees. Plaintiff's attorney testified that he had at least one conversation with plaintiff regarding her obligation to preserve or protect her social media accounts. (Fogg Depo. p. 25.) Similarly, plaintiff testified that on at least one occasion someone at the attorney's law firm told her she could not delete or destroy her social media account or the postings therein. (Plaintiff Depo. pp. 62-63.) To the extent Lee Memorial suggests plaintiff's attorney should be held liable for plaintiff subsequently deleting the account anyways (Doc. #193, p. 12), the Court declines to do so.

Lee Memorial also argues plaintiff's attorney acted improperly for failing to confirm plaintiff checked her Facebook

account for responsive posts as part of discovery.  (Id. p. 13.)
As noted, Lee Memorial submitted interrogatories and requests for
production regarding various types of Facebook posts plaintiff may
have made starting on July 1, 2016.  Plaintiff's attorney
testified that plaintiff was provided with the discovery requests
and plaintiff stated there were no responsive documents.  (Fogg
Depo. pp. 51.)  However, the record indicates plaintiff did not
affirmatively check her Facebook history before informing her
attorney of this, and both plaintiff and the attorney testified no
one from the law firm specifically instructed plaintiff to look
through her Facebook account for responsive posts.[5]  (Id. pp. 52-
53; Plaintiff Depo. pp. 86-87.)  Plaintiff's attorney also
testified that he did not take any steps to verify the accuracy of
the information besides speaking to plaintiff.  (Fogg Depo. p.
34.)  He did, however, testify that someone at the firm would have
attempted to verify that the account was deactivated per customary
practice, but he could not recall who.  (Id. pp. 36-37.)

---

[5] In her June 2018 deposition, plaintiff testified she had
not tried to reactivate her Facebook account as part of discovery,
asking "Why would I? As part of this discovery. What do I need to
discover? . . . Why would I want to go check on something." (Doc.
#120-49, p. 3117.)  Similarly, in her recent deposition plaintiff
testified she did not check her Facebook as part of the discovery
requests, stating there were no documents responsive to the
request.   (Plaintiff Depo. pp. 85, 86.)   When asked if she
looked, plaintiff again responded, "Why would I need to go back
and look?" (Id. p. 85.)

Lee Memorial suggests the attorney's approach of "blindly accept[ing]" plaintiff's answers without an independent inquiry warrants sanctions under section 1927. (Doc. #193, p. 13.) The Court disagrees. Even if plaintiff's attorney did improperly accept plaintiff's answers without "independent inquiry" (an issue that will be discussed more in-depth later in this Opinion and Order), the Court finds such conduct would constitute negligence rather than recklessness. As negligent conduct does not support a finding of bad faith, Amlong, 500 F.3d at 1239, the Court declines to impose sanctions on plaintiff's attorney pursuant to section 1927.

## B. Federal Rules of Civil Procedure

Lee Memorial next argues that both plaintiff and her attorney should be sanctioned for violating Rules 26 and 37 of the Federal Rules of Civil Procedure. (Doc. #193, pp. 15-18.) The Court will address these arguments individually.

### 1. Rule 26

Rule 26 provides the general provisions governing discovery, including the requirement that every discovery response be signed by at least one attorney of record. Fed. R. Civ. P. 26(g)(1). Rule 26(g) further states that by signing, an attorney "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," the disclosure "is complete and correct as of the time it is made." Fed. R. Civ. P.

26(g)(1)(A). Under this rule, "an attorney must make a reasonable investigation and effort to assure that the client has provided all information and documents available to it which are responsive to the discovery request." Sexton v. United States, 2001 WL 649445, *1 (M.D. Fla. Apr. 12, 2001). If a certification violates this rule without "substantial justification," the Court "must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3); see also Prior v. State Farm Fire & Cas. Co., 2013 WL 12158147, *1 (M.D. Fla. Feb. 7, 2013) ("To avoid sanctions, the party who is alleged to have failed to comply with Rule 26 bears the burden to show that its actions were substantially justified or harmless.").

Lee Memorial argues plaintiff's counsel violated Rule 26(g) when he signed and certified plaintiff's discovery responses stating there were no responsive documents and suggesting her Facebook account was lost. (Doc. #193, pp. 17-18.) As noted, in responding to Lee Memorial's interrogatories, plaintiff stated her Facebook account was deactivated and she did not believe any of her posts mentioned Lee Memorial, her hospitalization at Cape Coral Hospital, or any of Lee Memorial's past or current employees. (Doc. #193-5, p. 73.) In responding to Lee Memorial's request for production, plaintiff stated she did not have any posts referencing these topics, or any referencing issues relating to her lawsuit or her mental or emotional state. (Doc. #193-6, p. 77.) Both of

these documents were signed by plaintiff's attorney (Doc. #193-5, p. 69; Doc. #193-6, p. 74), implying counsel conducted the "reasonable inquiry" required pursuant to Rule 26(g)(1)(A).

However, it seems without question at least one Facebook post existed that fell within the scope of Lee Memorial's request. As stated, plaintiff used Facebook's location feature to indicate she was at the Cape Coral Hospital at 1:16 a.m. on July 17, 2016 and posted that she was "Getting well." (Doc. #193-2, pp. 56.) Such a post clearly references her hospitalization at the Cape Coral Hospital. Additionally, based on the testimony provided to the Court, it seems plaintiff's Facebook account was already deleted rather than only deactivated when she responded to Lee Memorial's interrogatories on April 23, 2018. (Plaintiff Depo. pp. 13-14) (stating plaintiff reactivated her Facebook account for four days at the end of March or beginning of April 2018 and then deleted it). Accordingly, the issue is whether plaintiff's counsel improperly signed and certified plaintiff's responses. Having reviewed the evidence presented to the Court and the arguments provided by the parties, the Court finds Rule 26(g) was not violated.

The deposition testimony indicates that in providing a client with discovery requests, plaintiff's attorney typically informs the client to use reasonable efforts to attempt to locate and

produce documents responsive to the requests.[6] (Fogg Depo. p. 51.) Counsel testified that he never instructed plaintiff to review her Facebook account for responsive posts because she told him the account was deactivated and there were no posts responsive to the requests. (Id. p. 52.) He also testified that per customary practice, someone at the firm would have attempted to verify whether the account was active prior to submitting the responses. (Id. pp. 36-37.) The Court finds counsel's actions are sufficient to constitute "reasonable inquiry" under Rule 26(g).

While "[b]lind reliance on the client is seldom a sufficient inquiry," Bernal v. All Am. Inv. Realty, Inc., 479 F. Supp. 2d 1291, 1327 (S.D. Fla. 2007) (citation omitted), an attorney "may rely on assertions by the client . . . as long as that reliance is appropriate under the circumstances," 1983 Advisory Committee Notes, 97 F.R.D. 165, 219; see also Menuel v. Hertz Corp., 2009 WL 10665026, *16 (N.D. Ga. Dec. 9, 2009) ("The operative language of Rule 26(g) is 'reasonable under the circumstances,' and while an attorney may rely on representations of the client, such reliance must be appropriate under the circumstances."). Here, the Court finds counsel could reasonably rely on plaintiff's representations

---

[6] There is evidence that plaintiff may not have understood her discovery responsibilities, as she testified she did not recall receiving any instructions with the discovery requests and "did not know about discovery." (Plaintiff Depo. pp. 61, 71, 82.)

that the Facebook account was deactivated and no responsive posts existed. Counsel was not required to certify as to the truthfulness of plaintiff's responses, <u>Tampa Port Auth. v. M/V Duchess</u>, 1997 WL 1175718, *6 (M.D. Fla. June 6, 1997), and it does not seem counsel could independently verify their accuracy regardless. Whether the Facebook account was deactivated or deleted at the time, it seems plaintiff's counsel would not have been able to access the account to check for responsive posts.[7] Therefore, as counsel had to rely on plaintiff's assertions, the Court finds he did not violate his duty to make a reasonable inquiry. <u>See</u> <u>Scanlon v. N3, LLC</u>, 2009 WL 10699687, *3 (N.D. Ga. May 26, 2009) ("[A]bsent reason to doubt a client's veracity, an attorney is entitled to rely on a client for information for which there is no other source."); <u>see also</u> <u>Mike Ousley Prods., Inc. v. WJBF-TV</u>, 952 F.2d 380, 382 (11th Cir. 1992) (noting that one of the factors to consider in determining whether an attorney made a reasonable inquiry is "whether he had to rely on a client for

_____

[7] To the extent Lee Memorial argues plaintiff's counsel should have known of the July 17th posts because counsel viewed plaintiff's Facebook page previously (Doc. #193, p. 17), the Court is unconvinced. While counsel testified he viewed plaintiff's Facebook account one time prior to the initial Complaint being filed (Fogg Depo. p. 12), he did not testify he thoroughly reviewed the account. Furthermore, plaintiff testified that when she had an active account, she posted on Facebook at least once or twice a week. (Plaintiff Depo. p. 45.) Under such facts, the Court will not assume that when counsel viewed the account prior to the Complaint being filed in November 2017 (Doc. #2), he saw the July 17th posts made over a year prior.

information as to the facts").[8]  As the Court has found plaintiff's attorney did not improperly certify the discovery responses, the Court denies Lee Memorial's request to impose sanctions pursuant to Rule 26(g).

**2. Rule 37**

Lee Memorial also argues plaintiff and her counsel should be sanctioned under Rule 37 (Doc. #193, p. 18), which governs the failure to make disclosures or cooperate in discovery.  Rule 37(c) provides that a court may impose sanctions on a party for failing to provide information as required under Rule 26(e) unless the failure was substantially justified or is harmless.  Fed. R. Civ. P. 37(c)(1).  Rule 26(e) imposes a duty on a party to supplement or correct a prior interrogatory response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."  Fed. R. Civ. P. 26(e)(1)(A).  "[T]he duty, while imposed on a 'party,' applies whether the corrective information is learned by the client or by the attorney."  1993 Advisory Committee Notes, 146 F.R.D. 401, 641.

---

[8] While the Eleventh Circuit in <u>Mike Ousley</u> was addressing the pre-filing inquiry required under Rule 11, a similar standard applies to Rule 26.  1983 Advisory Committee Notes, 97 F.R.D. 165, 219 (stating the "reasonable inquiry" standard under Rule 26 "is an objective standard similar to the one imposed by Rule 11").

The Court rejects Lee Memorial's argument that plaintiff's counsel should be sanctioned under Rule 37. The deposition testimony indicates counsel told plaintiff not to delete the Facebook account, plaintiff deleted the account without informing counsel, and counsel did not learn of this until after Lee Memorial challenged plaintiff's April 23rd responses. The testimony also indicates (1) counsel unsuccessfully attempted to access the account upon receiving Lee Memorial's challenge (Fogg Depo. pp. 43-44), and (2) counsel asked plaintiff to check her Facebook for responsive posts but she had already deleted the account (Plaintiff Depo. pp. 46, 49). Soon thereafter on May 16th, a supplemental response was provided to Lee Memorial in which plaintiff stated the account was deleted. (Doc. #193-7, p. 84.) Under these facts, the Court finds plaintiff's attorney did not violate his duty to supplement under Rule 26(e), and therefore sanctions are inappropriate under Rule 37(c).

Turning to plaintiff, Lee Memorial argues she was obligated under Rule 26(e) to turn over responsive posts after reactivating her Facebook account in 2018. (Doc. #193, pp. 17-18.) As noted, the record indicates plaintiff deactivated her account in October 2017, reactivated the account for several days at the end of March or beginning of April 2018, and then deleted the account. However, all this appears to have taken place prior to plaintiff submitting her responses to Lee Memorial on April 23rd. As such, Rule 26(e),

which creates a duty to supplement or correct responses already made, would not apply to plaintiff's actions at the end of March or beginning of April. Accordingly, the Court denies Lee Memorial's request to sanction plaintiff pursuant to Rule 37.

**C. Inherent Authority**

Finally, Lee Memorial requests the Court sanction plaintiff under its inherent authority for plaintiff's spoliation of the Facebook account. (Doc. #193, pp. 18). A district court has "broad discretion" to impose sanctions for spoliation, which is derived "from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." Austrum v. Fed. Cleaning Contractors, Inc., 149 F. Supp. 3d 1343, 1346 (S.D. Fla. 2016) (quoting Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005)). Generally spoliation is established when the party seeking sanctions proves (1) the missing evidence existed at one time, (2) the alleged spoliator had a duty to preserve the evidence, and (3) the evidence was crucial to the movant being able to prove its prima facie case or defense. St. Cyr v. Flying J Inc., 2007 WL 1716365, *3 (M.D. Fla. June 12, 2007) (citation omitted). Additionally, in the Eleventh Circuit, sanctions for spoliation of evidence are appropriate "only when the absence of that evidence is predicated on bad faith." Swofford v. Eslinger, 671 F. Supp. 2d 1274, 1280 (M.D. Fla. 2009) (quoting Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997)).

Factors to be considered when determining the seriousness of the sanctions to impose against a party for failure to preserve critical evidence in its custody vary according to (1) the willfulness or bad faith of the party responsible for the loss or destruction of the evidence, (2) the degree of prejudice sustained by the opposing party, and (3) what is required to cure the prejudice. <u>St. Cyr</u>, 2007 WL 1716365, *4 (citations omitted). As a sanction for plaintiff deleting her Facebook account, Lee Memorial requests costs and adverse jury instructions. (Doc. #193, pp. 22-24.) Having reviewed the evidence and arguments of the parties, the Court finds spoliation sanctions are inappropriate because Lee Memorial has failed to demonstrate plaintiff acted in bad faith in deleting her Facebook account.[9]

Plaintiff testified that she deleted the account rather than leaving it deactivated because she was scared "somehow some way someone could still get in it and find me and hurt me as I was threatened." (Plaintiff Depo. p. 33.) She has also testified that during the alleged sexual assault, Hechavarria stated he knew her address and threatened to "come get" her (Doc. #120-49, p.

---

[9] There are also questions as to whether the Facebook evidence is "crucial," and whether Lee Memorial has sustained a great degree of prejudice given that it possesses at least some of plaintiff's Facebook posts and other posts in which she is tagged. However, because the Court finds Lee Memorial has failed to demonstrate the Facebook account was deleted in bad faith, these issues need not be addressed.

3036; Plaintiff Depo. p. 12), and that despite her attempts to set privacy settings on her account she was contacted through Facebook by the media after Hechavarria was arrested (Plaintiff Depo. p. 12).

Despite Lee Memorial's argument to the contrary (Doc. #193, p. 20), the Court finds plaintiff's explanation is credible given the circumstances of this case, and the Court cannot say she acted in bad faith by deleting the account. See Wandner v. Am. Airlines, 79 F. Supp. 3d 1285, 1298 (S.D. Fla. 2015) ("Given this Circuit's requirement that an adverse inference flowing from spoliation requires the presence of bad faith, even grossly negligent discovery conduct does not justify that type of jury instruction."); Preferred Care Partners Holding Corp. v. Humana, Inc., 2009 WL 982460, *7 (S.D. Fla. Apr. 9, 2009) (describing defendant's performance in carrying out its discovery obligations as "clearly egregious," but nonetheless finding it was the result of "grossly negligent oversights" rather than bad faith). As Lee Memorial has failed to demonstrate the required bad faith, spoliation sanctions are inappropriate.[10]

---

[10] While the Court will not impose spoliation sanctions, Lee Memorial is not precluded "from introducing into evidence the facts concerning this failure to preserve relevant [evidence]." Socas v. The Nw. Mut. Life Ins. Co., 2010 WL 3894142, *9 (S.D. Fla. Sept. 30, 2010); see also Wandner, 79 F. Supp. 3d at 1300 ("[A]n order denying spoliation sanctions would not be the death knell for Wandner's efforts to present the County's actions (or inactions) to a jury.").

While the Court will not impose a sanction on plaintiff, it feels obligated to rebuke her discovery efforts in this case. The record indicates plaintiff had already deleted her Facebook account when she responded to Lee Memorial that the account was only deactivated. Furthermore, plaintiff's deposition testimony indicates she did not attempt to reactivate and look through her account for responsive posts, believing none existed because she could "absolutely remember everything [she] did not post." (Plaintiff Depo. p. 85.) However, this has proven to be untrue, and unfortunately resulted in a waste of time and litigation. Therefore, to the extent plaintiff's attorneys request the Court sanction Lee Memorial "for unnecessarily multiplying these proceedings" (Doc. #197, p. 6), the Court denies that request.

Accordingly, it is hereby

**ORDERED:**

Defendant's Second Amended Motion for Spoliation Sanctions (Doc. #193) is **DENIED**.

**DONE and ORDERED** at Fort Myers, Florida, this ___26th___ day of August, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record